ARTHUR E. ROSS  #1005
126 Queen Street, Suite 210
Honolulu, Hawaii 96813
Telephone (808) 521-4343

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 3 0 2006

at __ o'clock and __ min. __ M
SUE BEITIA, CLERK

Attorney for Petitioner/Movant
FELIPE RAGUINDEN DOMANGUERA

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>vs. )<br><br>FELIPE RAGUINDEN<br>DOMANGUERA )<br><br><br>Petitioner/Movant. )<br>_____ ) | CR NO. 04-00061-JMS-02<br>CV NO. 06-00580 JMS-KSC<br><br>MEMORANDUM OF LAW IN<br>SUPPORT OF MOTION UNDER<br>28 U.S.C. § 2255 CHALLENGING<br>A SENTENCE; EXHIBITS "A" TO<br>"H"; CERTIFICATE OF SERVICE<br><br><br><br>DATE: _____<br>TIME: _____<br>JUDGE: J. MICHAEL SEABRIGHT |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 CHALLENGING A SENTENCE

1

## TABLE OF CONTENTS

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENTS . . . . . . . . . . . . . . . . . 12

    CLAIM #1 . . . . . . . . . . . . . . . . . . . . 12
A. GROUND ONE . . . . . . . . . . . . . . . . . . . 13
       Supporting facts
       Summary
       Argument

    CLAIM #2 . . . . . . . . . . . . . . . . . . . . 17
B. GROUND TWO . . . . . . . . . . . . . . . . . . . 17
       Supporting facts
       Summary
       Argument

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 21

PETITIONER'S LIST OF EXHIBITS

## TABLE OF AUTHORITIES

### CASE AUTHORITIES

MacFarlane v. Fogle,
179 F.3d 1131 (9th Cir. 1999) . . . . . . . . . . . . . . 16

McMann v. Richardson,
397 U.S. 759, 25 L.Ed.2d 763, 90 S.Ct. 1441 (1970) . . . . . 14

North Carolina v. Alford,
400 U.S. 25, 27 L.Ed.2d 162, 91 S.Ct. 160 (1970) . . . . . . 14

United States v. Armstrong,
517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) . . . . 16

United States v. Booker,
125 S.Ct. 738 (January 12, 2005) . . . . . . . . . . . . 17, 19

United States v. Doe,
125 F.3d 1249 (9th Cir. 1997) . . . . . . . . . . . . . . 15

United States v. Lieberman,
971 F.2d 989 (3rd Cir. 1992) . . . . . . . . . . . . . . . 16

United States v. Parks,
89 F.3d 570 (9th Cir. 1996) . . . . . . . . . . . . . . . 16

Williams v. Illinois,
399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970) . . . . . 16

## MEMORANDUM OF LAW IN SUPPORT OF PETITION UNDER 28 U.S.C. §2255 CHALLENGING SENTENCE IMPOSED BY THE U.S. DISTRICT COURT

### STATEMENT OF JURISDICTION

Petitioner Felipe Raguinden Domanguera ("Petitioner") moves pursuant to 28 U.S.C. § 2255 to challenge the sentence imposed on him in this case, on October 19, 2005. CR 186.[1]  Judgment was entered on October 27, 2005. CR 188. The district court's jurisdiction arose from alleged violations of federal criminal law in Title 21 of the United States Code.

### BACKGROUND

Petitioner and two co-defendants, Jaime Agtang ("Agtang") and Dan Tauyan ("Tauyan"), were arrested at Agtang's house on January 22, 2004, following a controlled FedEx delivery of pseudo-methamphetamine. Agtang accepted and signed for the FedEx package (parcel #1) at his address. Then the three men drove to an apartment complex nearby; Agtang and Tauyan left and Petitioner entered the complex. (A short time later, when a beeper signaled to waiting law enforcement that the parcel had been opened, agents forced their way into unit #10, Petitioner's residence, and arrested Petitioner.)

Agtang's home remained under observation by law enforcement agents, who saw Christopher Mabanag ("Mabanag") carry another

---

[1]/ CR refers to the District Court's docket (the Clerk's Record).

1

FedEx parcel (parcel #2) into the garage.  When Agtang and Tauyan
returned to Agtang's address they and Mabanag (and two others)
were arrested.  Agtang stated that parcel #1 was intended for a
person named "Dan" and was similar to approximately 10 previous
parcels he had received.

Agtang further related that he, Tauyan and Petitioner had
taken parcel #1 to Petitioner's apartment.  When the interviewing
agents informed Agtang that Petitioner had opened the parcel
Agtang stated that Petitioner was not the intended recipient and
may have intended to steal whatever was inside.  Based on
Agtang's consent to search, agents found parcel #2 which
contained approximately two pounds of crystal methamphetamine.

Tauyan stated to agents that he knew that parcel #1 was
intended to go to a person named "Dan" and that he himself was a
dr y ser.  Tauyan later stated that he thought there might be
drugs in parcel #1.

Mabanag stated that he had previously received approximately
five parcels similar to parcel #2 to deliver to Agtang's home, on
their way to Dan Langaman, for which he received $500 each.
Later, in October 2004, Mabanag detailed his own direct
involvement with Langaman, including distribution of "ice" to
individuals and making money orders for Langaman.

On January 23, 2004 Petitioner Domanguera and co-defendants
Agtang and Tauyan were charged by  complaint with drug offenses.

2

CR 1.  On February 4, 2004 May 25, 2000, Petitioner, Agtang and
Tauyan were charged in a single-count indictment with conspiracy
to distribute "50 grams or more of methamphetamine, its salts,
isomers and salts of its isomers, a Schedule II controlled
substance, approximately five pounds, in violation of Title 21,
United States Code Sections 846, 841(a)(1) and 841(b)(1)(A)."  CR
20.

On May 4, 2004 Agtang changed his plea to guilty pursuant to
a plea agreement.  CR 55, 56.  (Later, after Petitioner was
sentenced to 108 months for his relatively minimal role in
Agtang's receipt of parcel #1, and following a government motion
for a downward departure, Agtang was sentenced to 57 months, in
February 2006.  CR 198.)

Petitioner's CJA counsel attempted to negotiate a plea
agreement with the prosecutor, beginning, at the latest, in June
2004.  CR 64.  In a letter dated July 1, 2004 AUSA Sameshima
informed Petitioner's attorney that she intended to insert waiver
language into Petitioner's plea agreement which would have
removed "sentencing facts" from the protection of the Sixth
Amendment:

   7A. Defendant, by entering this plea, specifically
   waives any right that he (she) may have to have facts that
   determine the sentence under the Sentencing Guidelines,
   including facts that support any: a) specific offense
   characteristic; b) enhancement; c) adjustment; d) relevant
   conduct; and/or e) finding of criminal history, alleged in
   the indictment and/or found by a jury.  Instead, defendant
   understands and agrees that the court will find the facts

3

necessary to determine defendant's sentence under the Sentencing Guidelines by a preponderance of the evidence, or, if the law requires, by clear and convincing evidence. **See,** Exhibit B.

In addition, apparently AUSA Sameshima would not allow Petitioner to cooperate against either his co-defendants or others involved in Agtang's drug trafficking scheme. **See,** Petitioner's letter to Chief Judge Ezra dated July 8, 2004, attached as Exhibit A.

On July 16, 2004 Petitioner moved for withdrawal of his not guilty plea and to plead anew. CR 77. Petitioner's Rule 11 hearing date was set for July 23, 2004. Remaining co-defendant Tauyan also moved to change his plea to guilty. CR 75.

On July 21, 2004, the government obtained a First Superseding Indictment against Petitioner and Tauyan[2] (both of whom had been at Agtang's home when Agtang accepted FedEx parcel #1), adding the following sentencing allegation:

> With respect to Count 1 of the First Superseding Indictment with which Defendants Dan Cornelius Claridad Tauyan and Felipe Raguinden are charged:
>
> On or about January 22, 2004, Defendants DAN COLUMPIT [sic] CLARIDAD TAUYAN AND [sic] FELIPE RAGUINDEN DOMANGUERA did knowingly and intentionally conspire to distribute and possess with intent to distribute, at least 1.5 kilograms of methamphetamine and less than 2.5 kilograms of methamphetamine, of at least 80% purity.

Petitioner's Rule 11 hearing date was reset from July 23,

---

[2]/ Pursuant to plea agreement Agtang entered a guilty plea on May 4, 2004.

4

2004 to July 29, 2004 as an arraignment and plea of guilty to the First Superseding Indictment. CR 80. Before then, however, AUSA Sameshima obtained a Second Superseding Indictment, virtually identical to the First Superseding Indictment. CR 89. On July 29, 2004 counsel for Petitioner requested, and was granted, additional time to give Petitioner a better opportunity for debriefing by the government. CR 91.

On August 17, 2004 Tauyan changed his plea to guilty pursuant to a plea agreement. CR 98. (Again, after Petitioner was sentenced to 108 months for his role in Agtang's receipt of parcel #1, and following a government motion for a downward departure, Tauyan was sentenced to 48 months, in July 2006. CR 223.)

On September 15, 2004 AUSA Sameshima obtained a Third Superseding Indictment against Petitioner -- the only remaining defendant originally charged -- and Mabanag, the person who carried FedEx parcel #2 into Agtang's garage and had direct involvement with both Agtang's and Langaman's ice distribution schemes. The three count Third Superseding Indictment added Count 2 against Petitioner as follows:

On or about January 22, 2004, defendants FELIPE DOMANGUERA and CHRISTOPHER MABANAG, knowingly and intentionally attempted to possess with intent to distribute 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 846.

5

The revised sentencing allegations with respect to Counts 1 and 2 charged:

> On or about January 22, 2004, defendants FELIPE DOMANGUERA and CHRISTOPHER MABANAG, did knowingly and intentionally conspire to distribute and possess with intent to distribute, at least 1.5 kilograms of methamphetamine and less than 2.5 kilograms of methamphetamine, of at least 80% purity.[3]

Mabanag later arrested CR 114

The next day, September 16, 2004, Petitioner's counsel wrote to AUSA Sameshima, summarizing his frustration with her on-going refusals to deal fairly with his clients, including Petitioner.[4] **See**, Exhibit C. Finally, on November 9, 2004, counsel moved to withdraw, in large part because he was unable to negotiate with AUSA Sameshima a plea agreement into which Petitioner could

---

[3]/ The sentencing allegation with respect to Mabanag alone charged knowing and intentional possession with intent to distribute between 500 grams and 1.5 kilograms of methamphetamine of at least 80% purity.

[4]/ Counsel's reference to "Tom" is to AUSA Tom Muehleck from whom AUSA Sameshima took over many cases. AUSA Muehleck's arbitrary and discriminatory treatment in negotiating plea agreements for this particular defense counsel's clients was, in large part, the basis for an appeal in a previous criminal case, U.S. v. Julie James, CR NO. 00-00186 WJR 10, U.S.C.A. 02-10592, to wit: that counsel's client received a harsher sentence due to AUSA Muehleck's manipulation of the facts he insisted be in the defendant's plea agreement, which determined defendant's guideline range. Then, after defendant entered her guilty plea, AUSA Muehleck allowed defendant's husband, whose drug conspiracy defendant had "facilitated," to plead based on a lesser drug amount.

This case appears to present a similar situation; Petitioner received a sentence almost double that imposed on active drug traffickers Agtang and Mabanag.

6

enter. CR 126. The motion was granted (CR 129) and new CJA counsel appointed (CR 128).

In January 2005 Petitioner moved to withdraw his not guilty plea and plead anew. CR 136. Petitioner entered his guilty plea pursuant to plea agreement on January 28, 2005.[5] CR 149, 152.

Petitioner's plea agreement provided, **inter alia:**

    1. Defendant acknowledges that he has been charged in the Third Superseding Indictment with two counts of violating Title 21, United States Code, Sections 841(a)(1) and 846: conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine (Count 1); and knowing and intentional attempt to possess with intent to distribute 50 grams or more of methamphetamine (Count 2).

    2. Defendant has read the charges against him contained in the Third Superseding Indictment, and those charges have been fully explained to him by her attorney.

    3. Defendant fully understands the nature and elements of the crimes with which she has been charged.

    4. Defendant will enter voluntary pleas of guilty to Count 1 of the Third Superseding Indictment charging him with conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers, in violation of 21 U.S.C. § 846. The prosecution agrees to move to dismiss Count 2 of the Third Superseding Indictment as to the Defendant after sentencing.

    5. Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

    6. Defendant enters this plea because he is in fact guilty of conspiring to distribute and possess with intent to distribute methamphetamine as charged in the Third Superseding Indictment, and agrees that this plea is

---

[5]/ Counsel has ordered the transcript of the sentencing hearing in order to develop facts supporting Petitioner's claims.

7

voluntary and not the result of force or threats.

7. Defendant understands that the penalties for the offenses to which he is pleading guilty include:

a. up to life imprisonment and a fine of up to $4,000,000, plus a term of supervised release of not less than five years and up to life,

b. a minimum term of imprisonment of ten years[.]

...

8. Defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charge to which Defendant is pleading guilty:

a. On or about January 22, 2004, a Federal Express parcel addressed to the 1214 Neal Avenue, Wahiawa, Hawaii, address was intercepted by law enforcement officers.  A search warrant executed on the parcel resulted in the recovery of over [sic] 1,379.3 grams (gross weight) of methamphetamine.  The parcel was repackaged with pseudo-methamphetamine, an electronic monitoring device and invisible flourescent powder and some of the original packaging materials.

b. On January 22, 2004, the parcel was delivered by an undercover Federal Express delivery person to 1214 Neal Avenue where co-defendant Jaime Columpit Agtang, the resident ... accepted the parcel, believing that the parcel contained methamphetamine and intending to distribute the parcel to others.

c. At the time that the parcel was delivered, Defendant was at 1214 Neal Avenue, Wahiawa, Hawaii, and he, together with co-defendant Jaime Columpit Agtang and Dan Cornelius Tauyan transported the parcel to his residence located at 95-009 Waikalani Drive, Mililani, Hawaii.  After arriving at his residence ... Defendant took the parcel into his residence, opened it and handles=d its contents.

d. Defendant admits that he knew there was methamphetamine contained in the parcel, that he opened the parcel intending to remove its contents and distribute it to others.

8

. . .

12. The Defendant is aware that he has the right to appeal the sentence imposed under Title 18, United States Code, Section 3742(a). Defendant knowingly waives the right to appeal, except as indicated in subparagraph "b" below, any sentence within the maximum provided in the statute(s) of conviction or the manner in which that sentence was determined on any of the grounds set forth in Section 3742, or on any ground whatever, in exchange for the concessions made by the prosecution in this plea agreement.

a. The Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

b. If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the Defendant, the Defendant retains the right to appeal the portion of his sentence greater than the guideline range and the manner in which that portion was determined under Section 3742 and to challenge that portion of his sentence in a collateral attack.

c. The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

13. The Defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines. The Defendant agrees that there is no promise or guarantee of the applicability or non-applicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

14. The Defendant understands that pursuant to Guideline 6B1.1(c), this Agreement cannot be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary pursuant to Guideline 6A1.1. The Defendant understands that the Court will not accept an agreement unless the court determines

9

that the remaining charges adequately reflect the seriousness of the actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

...

In Petitioner's PSR a probation officer determined that his base offense level ("BOL") was 36, based on 1,344 grams of "ice." PSR ¶¶ 33-34. After a three-point decrease for acceptance of responsibility and application of the two-point "safety-valve" reduction, Petitioner's total offense level was 31. PSR ¶¶ 35-44. At criminal history ("CH") I this yielded a guideline range of 108 to 135 months. (In determining that Petitioner was subject instead to the statutory mandatory minimum, the probation office determined that his range was 120-135 months. PSR ¶ 69.)

Petitioner's objected that since he was clearly less culpable in Agtang's drug conspiracy than his co-defendants his BOL should be no more than 30, pursuant to guideline § 2D1.1(a)(3), based on his minor role in the offense. Further, he argued he was entitled to a two-level downward adjustment under guideline § 3B1.2 based on his minor role.

In response the probation office stated:

Response: The defendant is being held accountable for the amount of drugs he removed from the parcel that was in his possession. The defendant took possession and responsibility for the "ice" that he received from his co-defendants. He suspected that the contents of the parcel were drugs, and he opened the parcel. The defendant became an integral part of the conspiracy when he attempted to flush the drugs down the toilet thereby, [sic] destroying evidence of his participation for accepting and opening the parcel. Consequently no changes are made to paragraphs 34

10

and 37.

The probation office tersely rejected Petitioner's mitigating role argument:

> Response: The evidence does not establish that the defendant played a mitigating role in the conspiracy. Consequently, no changes are made to paragraphs 39, 42, 44, and 69.

The probation office ignored Petitioner's objection that satisfaction of the criteria for qualified for the safety valve entitled him not only to the two-point "safety-valve" reduction but "exempt[ed him] from any otherwise applicable statutory mandatory minimum sentence[.]" Application Note 9 to 5C1.2.

At sentencing on October 19, 2005 the Court imposed a sentence of 108 months, the bottom of the guideline range as calculated in PSR ¶ 69, without regard for the statutory mandatory minimum. Nevertheless, Petitioner received a much harsher sentence than **any** of the defendants charged in CR 04-00061 JMS.[6]

---

[6]/ Agtang (01) pled guilty to the original Indictment, pursuant to a plea agreement. After the government made a motion for downward departure on his behalf, he was sentenced to 57 months in February 2006. CR 192-95, 198.

Tauyan (03) pled guilty to the Second Superseding Indictment. After the government made a motion for downward departure on his behalf, he was sentenced to 48 months in July 2006. CR 218, 223.

Mabanag (04) pled guilty to the Third Superseding Indictment. After the government made a motion for downward departure on his behalf, he was sentenced to 57 months in
(continued...)

11

On March 20, 2006 Petitioner wrote to his appointed CJA counsel requesting information on his Notice of Appeal. **See,** Exhibit D. He wrote similar letters to the Clerk of the U.S. District Court and to Judge Seabright requesting information about an appeal he thought his CJA counsel had filed. **See,** Exhibits E and F.

Counsel responded by letter dated April 27, 2006 stating that no Notice of Appeal had been filed because: (1) Petitioner's waiver of appeal in ¶ 12 of his plea agreement gave him no right to appeal; and (2) Petitioner had not earlier informed counsel that he wanted to appeal. Exhibit G. However, the letter was mis-addressed (to ("Felipe Raguinden" instead of to "Felipe Domanguera") and Petitioner did not receive it.

On July 27, 2006 Petitioner again wrote to the Clerk of the District Court stating that (1) he had not had a response from his CJA counsel; and (2) he needed new counsel appointed to assist him. CR 230; Exhibit H. The District Court held a hearing on Petitioner's Motion to appoint counsel on August 24, 2006 and counsel was appointed. CR 234, 235.

### SUMMARY OF ARGUMENT

Petitioner received a much harsher sentence than **any** of the defendants charged in the same case. Petitioner's court

---

[6](...continued)
February 2006. CR 199, 205.

appointed counsel effectively abandoned him when he failed to advise Petitioner of his right to appeal his sentence. Notwithstanding the waiver provision of Petitioner's plea agreement, it was counsel's duty to correctly advise his client of his right to appeal.

This was ineffective assistance of counsel. Petitioner submits that appellate waivers cannot be assumed to be valid without a careful review of the record. **See below**, Claim #1, its grounds and supporting facts.

Further, sentencing counsel was ineffective by not presenting advocacy based upon Apprendi and its progeny regarding Sixth Amendment issues. Either counsel did not recognize that the factual disputes regarding Petitioner's responsibility for specific drug quantities raised Apprendi, Harris, Blakely and Booker issues -- since no such issues appear to have been raised -- or he assumed that Petitioner's appellate waiver might excuse him from vigorous advocacy regarding the sentencing court's determination of the "appropriate" sentencing guidelines. **See below**, Claim #2, its grounds and supporting facts.

13

## CLAIM #1

A. GROUND ONE: Ineffective assistance of counsel: incorrect advice on right to appeal.

Supporting facts:

— Exhibit G demonstrates counsel's misunderstanding of Petitioner's rights to appeal, i.e., on grounds that his waiver was involuntary.

Summary

It was sentencing counsel's misunderstanding of Petitioner's right to appeal which led to there being no post-sentence review for issues which could have been raised on appeal, despite the appellate waiver provision in Petitioner's plea agreement.

Argument

Pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A, attorneys appointed to represent persons financially unable to obtain adequate representation:

> (1) "... shall continue to serve until his or her representation is terminated by the provisions of the plan of the court ... or by court order"; and (2) "... shall, following the imposition of sentence in a criminal case where the defendant has been found guilty after trial or entered a plea of guilty, advise the defendant of his or her right to appeal and of his or her right to counsel on appeal. If requested to do so

14

by the defendant, counsel <u>shall</u> file a timely Notice Of Appeal. ..."

Clearly, a defendant cannot request that counsel file a Notice of Appeal if counsel has failed to inform him of his rights to appeal and to have counsel file that Notice or if counsel has misinformed him that he had no such rights.

A guilty plea is valid only if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." <u>North Carolina v. Alford</u>, 400 U.S. 25, 31, 27 L.Ed.2d 162, 91 S.Ct. 160 (1970). "It must be an intelligent act 'done with sufficient awareness of the relevant circumstances and likely consequences.'" <u>McMann v. Richardson</u>, 397 U.S. 759, 766, 25 L.Ed.2d 763, 90 S.Ct. 1441 (1970) (citation omitted).

If sentencing counsel had correctly advised Petitioner about his right to appeal, appellate counsel could have discovered and argued that Petitioner's plea was "involuntary" for two reasons which rendered the appellate waiver provision of his plea agreement invalid. (These claims require review of transcripts of the withdrawal and substitution hearings as well as the Rule 11 colloquy. Counsel currently appointed in this matter has ordered production of the transcripts of relevant proceedings in order to develop Petitioner's claims.)

First, that Rule 11 violations rendered the plea

15

involuntary, e.g., that the Court accepted the plea without making the advisements required by Rule 11 of the Fed.R.Cr.P.

Second, that an AUSA's disparate treatment of Petitioner's previous CJA counsel wrongfully induced a guilty plea which resulted in constitutionally disparate treatment, prejudiced Petitioner or denied him a fair sentencing proceeding. This is a claim of prosecutorial misconduct.

"While prosecutorial discretion is broad, it is not 'unfettered,' and is subject to constitutional constraints. United States v. Doe, 125 F.3d 1249, 1254 (9th Cir. 1997)(citations omitted). Both procedural due process and "[t]he equal protection component of the due process clause ... impose[] constitutional constraints on a prosecutor's discretion." Id. A prosecutor's conduct toward a particular attorney's clients, which "demonstrate[] a personal and vindictive bias" against that attorney, thereby denies those clients equal protection under the law, if the record shows that the prosecutor -- the government's representative -- both abused prosecutorial discretion and acted without a rational basis. **See also,** Thompson v. Calderon, 120 F.3d 1045 (9th Cir. 1997) (prosecutor advanced inconsistent theories against defendant and co-defendant which constituted fundamental error that violated due process; due process analysis addressed the "glaring inconsistenc[ies]" between the prosecutor's "factual representations at the two trials"; that

16

"manipulat[ion]" of the evidence was one factor in finding of misconduct.).

It is not within an individual prosecutor's discretion to decline to offer a particular plea based on a discriminatory purpose or intent or other arbitrary classification.  One of the constraints to which a prosecutor's discretion is constitutionally subject is "imposed by the equal protection component of the Due Process Clause of the Fifth Amendment[:] that the decision whether to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification[.]'  A defendant may demonstrate that the administration of a criminal law is 'directed so exclusively against a particular class of persons ... with a mind so unequal and oppressive' that the system of prosecution amounts to 'a practical denial' of equal protection of the law."  United States v. Armstrong, 517 U.S. 456, 464-65, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (citations omitted).

Petitioner received a harsher sentence than **any** of his co-defendants.  Impermissible discrimination in the sentencing context violates the equal protection clause of the Fourteenth Amendment.  Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970).  **See also**, MacFarlane v. Fogle, 179 F.3d 1131 (9th Cir. 1999); United States v. Parks, 89 F.3d 570, 573 (9th Cir. 1996) (mis-application of the guidelines "violate[d] the

17

fundamental fairness guaranteed by the Due Process Clause of the Fifth Amendment."). If constitutional violations led to sentencing disparity, they are, alone, sufficient to warrant a downward departure. **See e.g.**, <u>United States v. Daas</u>, 198 F.3d 1167 (9th Cir. 1999); <u>United States v. Lieberman</u>, 971 F.2d 989 (3rd Cir. 1992) (manipulation of indictment warranted downward departure).

<u>**CLAIM #2**</u>

B. GROUND TWO: Ineffectiveness of counsel: no advocacy based on <u>Apprendi</u>, and its progeny, <u>Harris</u>, <u>Blakely</u> and <u>Booker</u>, regarding Sixth Amendment issues.

<u>Supporting facts</u>:

— Petitioner entered his plea in January 28, 2005, after <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000); <u>Harris v. United States</u>, 536 U.S. 545, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002); <u>Blakeley v. Washington</u>, 124 S.Ct. 2531, decided on June 24, 2004; and <u>United States v. Booker</u>, 125 S.Ct. 738, decided on January 12, 2005. Petitioner was sentenced on October 19, 2005.

— counsel apparently did not recognize that the factual disputes regarding drug quantities raised <u>Apprendi</u>-<u>Booker</u> issues, since no such issues were raised.

<u>Summary</u>

An evidentiary hearing is required to determine why

sentencing counsel acted or failed to act with regard to these Sixth Amendment issues.  It was sentencing counsel's failure to assert meritorious issues on Petitioner's behalf that rendered him ineffective; he did not correctly advise Petitioner regarding core Sixth Amendment at sentencing since apparently he did not recognize them.

### Argument

"'[T]he purpose [of the effective assistance guarantee of the Sixth Amendment] is simply to ensure that criminal defendants receive a fair trial.'"  Bloomer v. United States, 162 F.3d 187, 194 (2nd Cir. 1998) (citation omitted).

> [W]hether counsel was ineffective based on the now familiar factors set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In order to obtain relief [on ineffectiveness claim], [Petitioner] must show both that counsel "was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment," and that the deficiency prejudiced him.  I d. at 687, 104 S. Ct. at 2064.

Smith v. Stewart, 140 F.3d 1263, 1268 (9th Cir. 1998).

The failure to become informed of the law affecting the client cannot be considered a tactical "choice."  Ineffectiveness of counsel "deprives [a] defendant of a substantive or procedural right to which the law entitles him." Washington v. Smith, 219 F.3d 620, 633 (7th Cir. 2000) (citation omitted).

The first step in any federal sentencing analysis is to determine what facts have been proved beyond a reasonable doubt,

19

or admitted in such a way that can be considered proved beyond a reasonable doubt.  The second step is to determine what statutory and guideline sentencing ranges those facts authorize.[7]

If the district court doesn't identify what the operative facts are, it can't apply constitutional principles to those facts or "consult" the guidelines in order to make sentencing decisions.  Because district courts are mandated to consult the guidelines, it is an abuse of discretion not to do so.  If the district court can't identify the Sixth Amendment facts it can't make the distinction between Sixth Amendment facts and those found by the lesser preponderance standard and determine how to weigh each in an advisory guideline system.

It is undisputed that the Apprendi[8] rule -- reiterated in Harris v. United States, 536 U.S. 545, 122 S. Ct. 2406, 153 L. Ed. 2d 524, 2002 U.S. LEXIS 4652 (2002), Blakely v Washington, 124 S.Ct. 2531 (2004), and United States v. Booker, 125 S.Ct. 738 (2005) -- limits the maximum authorized sentencing range to facts what **have been** pleaded, proven (beyond a reasonable doubt), or

---

[7]/ It was accepted practice pre-Apprendi to determine base offense guideline levels based on statutory ranges; this has remained so post-Blakely where district court judges do not determine what the operative facts -- which Apprendi and its progeny identified as setting authorized sentencing ranges -- **are**.

[8]/ Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

20

admitted.  <u>Blakely</u>, <u>Booker</u> -- and even <u>Harris</u>, a pre-<u>Blakely</u> case -- all reaffirmed this: that the maximum authorized range includes the maximum under the guidelines.

Thus, the constitutional thing to do would be to first identify what the Sixth Amendment facts are, then determine what the Sixth Amendment-compliant BOL and BOL range is.  Only then should sentencing courts determine what weight to give judicially-found facts under the "advisory" guidelines.

CJA sentencing counsel made no objections to the guideline calculations of the PSR and presented no Sixth Amendment arguments to the court before sentencing.  Without counsel having asked the court to recognize what the operative Sixth Amendment facts were it is extremely unlikely that the court recognized which were the facts that should set the guideline sentencing parameters.

## CONCLUSION

Petitioner should be granted an evidentiary hearing on his ineffective assistance claim as well as claims to which he was denied review due to counsel's failure to correctly advise him of his appellate rights and to counsel's failure, based on his misunderstanding of the law, to perfect issues for possible appeal.  He alleges "'facts which, if proved, would entitle him to relief.'"  <u>Cardwell v. Greene</u>, 152 F.3d 331, 336 (4th Cir. 1998) (citations omitted).


DATED:   Honolulu, Hawaii, October 27, 2006

Respectfully submitted,


ARTHUR E. ROSS
CJA Attorney for Petitioner
FELIPE RAGUIDEN DOMANGUERA

22