EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI #2286
Chief, Drug/Organized Crime Section

BEVERLY WEE SAMESHIMA #2556
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone: 541-2850
Facsimile: 541-2958
E-mail: Beverly.Sameshima@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 04-00061-02 JMS |
| | ) | CV. NO. 06-00580 JMS-KSC |
| Plaintiff, | ) | |
| | ) | UNITED STATES' MEMORANDUM IN |
| | ) | OPPOSITION TO DEFENDANT'S |
| vs. | ) | MOTION UNDER 28 U.S.C. § 2255 |
| | ) | CHALLENGING A SENTENCE BY THE |
| FELIPE RAGUINDEN DOMANGUERA, | ) | U.S. DISTRICT COURT FOR THE |
| | ) | DISTRICT OF HAWAII; |
| Defendant. | ) | DECLARATION OF BRANDON FLORES; |
| | ) | DECLARATION OF BEVERLY WEE |
| | ) | SAMESHIMA; EXHIBITS "A"- "I;" |
| | ) | CERTIFICATE OF SERVICE |

UNITED STATES' MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION UNDER 28 U.S.C. § 2255 CHALLENGING A SENTENCE
BY THE U.S. DISTRICT COURT FOR THE DISTRICT OF HAWAII

TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . i

I.   The Underlying Criminal Case . . . . . . . . . . . . . . 2

II.  The Guilty Plea . . . . . . . . . . . . . . . . . . . . 4

III. Sentencing Proceedings . . . . . . . . . . . . . . . . 6

IV.  Defendant's Claim That Brandon Flores Provided Ineffective
     Assistance of Counsel Is Not Supported by the Record . . . 7

     A.   Legal Standards . . . . . . . . . . . . . . . . . . 7

     B.   Brandon Flores's Actions Did Not Fall below the
          Standard of Reasonableness . . . . . . . . . . . . 9

          1.   Brandon Flores Thoroughly Advised Defendant of
               His Right to Appeal and Defendant Understood
               These Rights Prior to Executing the Appeal
               Waiver . . . . . . . . . . . . . . . . . . . 9

          2.   Brandon Flores Addressed Possible Sentencing
               Issues and Took Appropriate Actions to Obtain a
               Favorable Result for the Defendant . . . . . . 11

          3.   Even Assuming Flores' Representation Was
               Ineffective, Defendant Cannot Demonstrate
               Prejudice as a Result of Such Representation . 13

     C.   There Is No Basis for Defendant's Claim That the
          Prosecutor Engaged in Prosecutorial Misconduct by
          Refusing to Allow Him to Cooperate or by
          Discriminating Against Him or His Counsel . . . . . 13

TABLE OF AUTHORITIES

Cases                                                      Page(s)

Blakely v. Washington, 542 U.S. 296 (2004) . . . . . . . . 3, 12

Doganiere v. United States, 914 F.2d 165 (9th Cir. 1990),
    cert. denied, 499 U.S. 940 (1991) . . . . . . . . . . . . 9

Hill v. Lockhart, 474 U.S. 52 (1985) . . . . . . . . . . . 7, 8

Ortiz v. Stewart, 149 F.3d 923 (9th Cir. 1998),
    cert. denied, 526 U.S. 1123 (1999) . . . . . . . . . . . 9

Strickland v. Washington, 466 U.S. 668 (1984) . . . 7, 9, 11, 13

United States v. Julie James, Cr. No. 00-00186 WJR . . . . . 15

United States v. Keller, 902 F.2d 1391 (9th Cir. 1990) . . . . 9


Statutes

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . . 1

<u>UNITED STATES' MEMORANDUM IN OPPOSITION TO DEFENDANT'S</u>
<u>MOTION UNDER 28 U.S.C. § 2255 CHALLENGING A SENTENCE</u>
<u>BY THE U.S. DISTRICT COURT FOR THE DISTRICT OF HAWAII</u>

The United States of America, through its undersigned attorneys, hereby submits this Memorandum in Opposition to Defendant's Motion Under 28 U.S.C. § 2255 Challenging a Sentence by the U.S. District Court for the District of Hawaii ("Motion").

Defendant Felipe Raguinden Domanguera's ("defendant") Motion asserts several claims.  The first claim attacks his former counsel's effectiveness with respect to defendant's appeal rights and alleged failures to address "Apprendi, Blakely, Harris," sentencing issues.  The second claim attacks the prosecutor in the case, alleging misconduct in "disparate treatment" of defense counsel, and asserting that the prosecutor refused to allow defendant to cooperate.  Both claims are unmeritorious.

Defendant claims that his counsel Brandon Flores, ("Flores") his attorney in the underlying criminal case, provided him with ineffective assistance of counsel.  He claims that Flores failed to (1) advise him of his right to file an appeal; and (2) explain to him his rights under "Apprendi, Blakely, Booker – and even Harris" as it relates to the maximum authorized range under the guidelines.  Although it is not clearly articulated, defendant also claims that government counsel in this case violated his constitutional rights because he was

1

treated differently from his co-defendants and his counsel, Jerry Wilson, was treated unfairly.[1]  As a result, the defendant's offers to cooperate were rejected, thereby depriving him of a favorable sentence.  As the following discussion indicates, defendant's claims are unsupported by the record.

## I.    The Underlying Criminal Case

The investigation in this case began when a law enforcement officer in San Diego intercepted a parcel at a San Diego FedEx facility on January 21, 2004.  A narcotics canine positively alerted to the presence of controlled substances within the parcel and the parcel was forwarded to Honolulu (its intended destination) for further investigation.  (Presentence Report ¶ 15, hereafter "PSR")  The parcel was opened pursuant to a search warrant and 1,344 grams of methamphetamine were recovered.  As a result of a controlled delivery of the parcel to co-defendant Jaime Agtang's house, defendant and two others were arrested.  (PSR ¶¶ 16-22)  Defendant was arrested after he took the parcel, opened its contents and then attempted to flush what

---

[1]  This claim appears to be based primarily on a letter which Jerry Wilson sent to AUSA Beverly Wee Sameshima, with a copy to Narcotics Chief Florence Nakakuni and which is attached as Exhibit "C" to defendant's motion.  In the letter, Wilson makes a number of accusations, none of which are substantiated by the record, or credible evidence.  From the government's point of view, the letter was pure rhetoric and the product of Wilson's frustration at being unable to work with defendant.

2

he believed was methamphetamine (it was pseudo-drugs replaced as part of the controlled delivery) down the toilet.  (PSR ¶ 18)

A federal grand jury returned an original indictment on February 4, 2004.  As the case developed and defendants either entered guilty pleas or new defendants were added, the grand jury returned subsequent indictments.  A first superseding indictment returned on July 21, 2004 eliminated Jaime Agtang as a defendant. A second superseding indictment returned on July 28, 2004 added sentencing allegations regarding drug purity and quantity reflecting the Supreme Court's decision in the <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) case.  A third superseding indictment adding defendant Christopher Mabanag and eliminating defendant Dan Tauyan[2] was filed on September 15, 2004.  (PSR ¶¶ 1-3)

Defendant has had three counsel in this case.  Lane Takahashi was defendant's original counsel.  On April 9, 2004, Takahashi filed a motion to withdraw as counsel, citing to defendant's dissatisfaction and loss of confidence in him due to his inability to obtain defendant's release.  Upon his withdrawal as counsel, Jerry Wilson was appointed.  Wilson attempted to withdraw as counsel on three separate occasions.[3]  Wilson was

---

[2]  Both Agtang and Tauyan entered guilty pleas.

[3]  See Declaration of Beverly Wee Sameshima, paragraphs 2 through 6 and exhibits attached thereto.

successful on his third and last try and an order granting his
motion to withdraw was granted by Magistrate Kurren on
November 18, 2004.  Attorney Brandon Flores was then appointed.
Flores remained Domanguera's attorney through sentencing on
October 19, 2005 when Defendant was sentenced to a term of 108
months.

## II.  **The Guilty Plea**

On January 28, 2005, defendant entered a guilty plea
before Magistrate Judge Leslie E. Kobayashi pursuant to a plea
agreement.  (See Exhibits "E" and "F" to Declaration of Beverly
Wee Sameshima.)  During the change of plea, defendant stated that
he had a chance to talk to his lawyer about the charges and all
the facts surrounding the charges.  (Exhibit "F," page 6)
Defendant also advised the magistrate that he was satisfied with
the work Mr. Flores had done for him.  Id.  Magistrate Judge
Kobayashi asked the prosecutor to set forth the essential terms
of the plea agreement.  Id. at pages 8-11.  The prosecutor
outlined the written terms of the plea agreement, including the
appeal waiver provision.  Id. at page 10.  After the prosecutor
recited the terms of the plea agreement, defendant told the Court
that he understood that those were the terms of the plea
agreement and that he understood everything.  Id. at page 11.

The Magistrate then also explained the appellate waiver
in paragraph 12 of the plea agreement.  She explained that

4

defendant was giving up his right to appeal any sentence imposed by the Judge except for two limited circumstances:  if the Judge gives defendant a more severe sentence than the calculated guidelines, or if defendant alleges ineffective assistance of counsel by his lawyer.  Id.  Defendant told the court he understood these terms.

During the proceeding, the magistrate also covered the potential minimum and maximum penalties for the offense of conviction.  Id. at pages 12.  She also explained the rights which the defendant was giving up by pleading guilty.  Id. at pages 16-17.  The prosecutor outlined the elements of the conspiracy charge and also set forth the facts forming the basis for the charges that were in pages four through five of the plea agreement.  Id. at pages 18-19.  Defendant also admitted in his own words what he did that made him guilty of the conspiracy count.  Id. at pages 19-23.  Defendant told the Court that he took the box and opened it, knowing that there was methamphetamine inside the box.  Id. at pages 19-20.  He also admitted that he was going to get a quantity of ice from the box and then give it back to his co-defendants.  Defendant told the judge that he knew that the co-defendants were going to distribute the ice to others.  Id. at 21-22.  The magistrate submitted a report and recommendation regarding that defendant's

5

guilty plea be accepted.  The Court accepted the plea on February 11, 2005.

## III. <u>Sentencing Proceedings</u>

Defendant was sentenced on October 19, 2005.  Defendant received a two-level reduction for safety valve, and three-level reduction for early acceptance of responsibility.  (PSR ¶ 35, 39-41)  Defendant's total offense level was 31, criminal history category I.  His guideline range was 108 to 135 months and he received a sentence at the lowest end of the range, 108 months imprisonment.  (See Exhibit "G" to Declaration of Beverly Wee Sameshima.)  Judgment was entered on October 27, 2005.  <u>Id.</u> Defense counsel Brandon Flores filed objections to the draft PSR and argued that defendant was entitled to a minor role adjustment, the same arguments defendant made here.  (Addendum to PSR)  The Court, after considering the arguments, brief and evidence in this case rejected this claim.  The court stated:

> "I think from the facts before the court its clear that the defendant understood what was in the box and clearly understood what was intended to happen with those drugs.  He himself was a drug addict.  He understood the game.  He knew what was going on here. He knew that those drugs were to be distributed for others to use.  And it may be initially he only wanted to get some drugs for himself.  The problem the court has is what he ultimately did, and that is the attempt to destroy the drugs.
>
> He has admitted, obviously, of participation with these others in understanding what the intent of the group was; that is, to distribute the drugs.  And he admitted apparently in the change of plea  ...

6

But in any event, when the two others left the area, defendant exited the vehicle, carrying a bag, which I think there's only one potential reading, which is that that bag contained the drugs.  And he went into his apartment, and then he attempted to destroy the drugs by flushing them down the toilet.  And I think that's the fact really that will preclude in my view an application of two levels for minor role."

(Exhibit "G," to Declaration of Beverly Wee Sameshima, pages 14-15)

## IV.   Defendant's Claim That Brandon Flores Provided Ineffective Assistance of Counsel Is Not Supported by the Record

A.   Legal Standards

Strickland v. Washington, 466 U.S. 668 (1984) sets forth a two-prong test for evaluating claims of ineffective assistance of counsel:  first, defendant must show, considering all the circumstances, that counsel's performance fell below an objective standard of reasonableness.  Id. at 687.  Second, the defendant must affirmatively prove prejudice.  Id.  The Supreme Court has held that the Strickland test applies to "challenges to guilty pleas based on ineffective assistance of counsel."  Hill v. Lockhart, 474 U.S. 52, 56 (1985).

To show that counsel's performance fell below an objective standard of reasonableness, the defendant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  Id. at 690. The Court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the

7

wide range of professionally competent assistance.  <u>Id.</u>  In making that determination, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  <u>Id.</u>

Even if the Court finds that counsel's performance was deficient, relief cannot be granted absent a showing of prejudice.  To affirmatively prove prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  <u>Id.</u> at 694.

In the context of a guilty plea, to prove prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. at 59.  For example, where a defendant alleges that his counsel did not conduct a full investigation prior to plea, the prejudice determination "will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.  This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." <u>Id.</u>  Further, in order to prevail, a defendant must allege in his habeas petition that, had counsel provided effective assistance of counsel, he would have pleaded not guilty and proceeded to trial.  <u>Id.</u> at 60;

8

Doganiere v. United States, 914 F.2d 165 (9th Cir. 1990), cert. denied, 499 U.S. 940 (1991); United States v. Keller, 902 F.2d 1391 (9th Cir. 1990).

The defendant raising a claim of ineffective assistance of counsel has a very heavy burden to bear, as "it is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689.

B.    Brandon Flores's Actions Did Not Fall below the Standard of Reasonableness.

1.    Brandon Flores Thoroughly Advised Defendant of His Right to Appeal and Defendant Understood These Rights Prior to Executing the Appeal Waiver.

Defendant claims that Flores was ineffective because he failed to advise Defendant of his right to appeal his sentence.[4] This claim is belied by the record. As set forth in the Flores Declaration, he discussed the terms of the defendant's plea

---

[4]  If the "files and records of the case conclusively show that the prisoner is entitled to no relief," the defendant is not entitled to a hearing. Ortiz v. Stewart, 149 F.3d 923, 924 (9th Cir. 1998), cert. denied, 526 U.S. 1123 (1999). The defendant must allege specific facts which, if true, would entitle him to relief. Id. Where the District Court can evaluate the claims on the basis of a conclusive record of the case, the court need not hold an evidentiary hearing. Doganiere v. United States, 914 F.2d 165, 1680 (9th Cir. 1990). The government submits that the files and records in this case conclusively show that Defendant is not entitled to relief. The court need not hold an evidentiary hearing.

agreement, including the waiver of appeal provision on numerous occasions. (Flores Declaration, ¶¶ 2,3 and 5) Defendant understood the waiver and both the Flores Declaration, and the transcript of the Rule 11 proceeding makes clear that Defendant knowingly and voluntarily agreed to waive his appellate rights. (Flores Declaration, ¶ 5; Exhibit "F" to the Declaration of Beverly Wee Sameshima, pages 10-11) The sentence in this case did not fall within the waiver exceptions. Accordingly, no notice of appeal was filed. Nor did the defendant express a desire to appeal the sentence. (Flores Declaration, ¶¶ 9-10) Flores did not receive Defendant's letter requesting an appeal nor any communication to this effect until he received a copy of the March 20th letter from Judge Seabright. (Flores Declaration, ¶ 9)

During the Rule 11 proceeding, both the prosecutor and the Magistrate explained the waiver provision. (Exhibit "F' to the Declaration of Beverly Wee Sameshima, pages 10-11) The defendant advised the magistrate that he understood the provision. He also told the magistrate he executed the plea agreement voluntarily and understood all its terms, which included the waiver provision. Id. at pages 7-8. In addition, Flores covered the waiver with defendant on more than one occasion prior to the defendant's signing of the plea agreement and entry of guilty plea. (Flores Declaration, ¶¶ 3-5) Flores

was satisfied that defendant understood what he was doing when he waived his right of appeal.  Id. at ¶ 5.

          After sentencing, Flores discussed the case with the defendant, whose main concern was whether he could serve the sentence in the Phillippines.  (Flores Declaration, ¶ 9) Defendant did not request that Flores file an appeal at that time.  Defendant well understood that he had waived all appeal rights except for two limited circumstances, neither of which was applicable.  (Flores Declaration, ¶¶ 9-10)  Based upon these factors, Defendant cannot demonstrate that Flores' actions were deficient or that they fell below an objective standard of reasonableness.  Defendant cannot meet his burden under Strickland.

> 2.    Brandon Flores Addressed Possible Sentencing Issues and Took Appropriate Actions to Obtain a Favorable Result for the Defendant.

          Defendant claims that his counsel presented no "advocacy based on Apprendi and its progeny, regarding Sixth Amendment issues."  (See Motion, page 18.)  Defendant's argument is not the model of clarity and does not articulate precisely what "factual disputes" regarding drug quantities or "Sixth Amendment Apprendi-Booker issues" Flores failed to address. Flores discussed possible approaches to address Defendant's sentencing liability, including a plea to the indictment, reserving the right to challenge the drug quantities.  (Flores

Declaration, ¶ 4)  Defendant's plea was negotiated in the wake of the <u>Blakely</u> case, at a time when many defense counsel were advising defendants to enter pleas to the indictment without a plea agreement and reserving their right to contest the drug quantities and purities at sentencing.  Flores and the Defendant discussed this possibility and concluded that there was no factual nor legal basis upon which to challenge the drug quantities.  In this case, the drugs were seized and in the possession of the DEA.  Both a quantitative and qualitative analysis of the drugs had been conducted by the DEA laboratory and there was no basis for a challenge to the analysis conducted. (Flores Declaration, ¶ 4)  This decision was reasonable.

Flores' approach was to obtain a role adjustment on behalf of the Defendant and he therefore filed an objection, asserting that Defendant was entitled to a minor role.  (Flores Declaration, ¶ 8)  Flores also argued vigorously that the evidence supported Defendant's minor role.  (See Exhibit "G" to the Declaration of Beverly Wee Sameshima, pages 4-7.)  Although the Court ultimately overruled the objection, Flores' decision was reasonable as it was calculated to raise issues which had some likelihood of success.

//

//

//

3.    Even Assuming Flores' Representation Was
Ineffective, Defendant Cannot Demonstrate
<u>Prejudice as a Result of Such Representation.</u>

Even if this Court finds that Flores' representation

was ineffective, Defendant cannot prove prejudice.  <u>Strickland,</u>

<u>supra</u>, at 687.  Defendant ultimately ended up with a sentence

which was below the mandatory minimum term and at the lowest end

of the advisory guideline range.  Flores sought appropriate minor

role adjustments; he filed a lengthy sentencing statement noting

this objection; he argued vigorously for such an adjustment.  In

addition, defendant received safety valve benefit.  His sentence,

at the very bottom of the guideline range was a fair and

reasonable one.  Under these circumstances, Defendant cannot

demonstrate that he was prejudiced by any of his counsel's

actions.

C.    There Is No Basis for Defendant's Claim That the
Prosecutor Engaged in Prosecutorial Misconduct by
Refusing to Allow Him to Cooperate or by Discriminating
<u>Against Him or His Counsel.</u>

Defendant claims that he was treated unfairly in this

case because the prosecutor engaged in prosecutorial misconduct,

resulting in disparate treatment of the defendant.  (See Motion,

page 16.)  Defendant argues that he received a harsher sentence

than his co-defendants.

Defendant's sentence was premised on the facts and

circumstances of his case and the factors pursuant to 18 U.S.C.

§ 3553(a), not because the prosecution discriminated against him.

13

Defendant was the only defendant in this case who did not
cooperate.  All other co-defendants in the case received motions
for downward departure based upon substantial assistance.  As a
result, they received reductions in their sentence.  In contrast,
defendant had difficulty accepting his role in the conspiracy and
acknowledging his guilt, a first step towards cooperation.  (See
Declaration of Beverly Wee Sameshima, ¶ 9)  Unlike his
co-defendants, Defendant maintained that he did not receive any
parcels from any of the sources or leaders of the organization.
The investigation revealed that defendant was not one of the
co-conspirators who agreed to accept FedEx drug parcels.  In
addition, Defendant did not engage in any direct dealings with
the source of the organization.  Id. at ¶ 9.  Accordingly, he was
not in a position to further the investigation as it related to
other targets who were higher in the organization.  Defendant
also experienced difficulty acknowledging his guilt and
understanding the legal concepts of liability and he was
frustrated that he could not be released on bail.  As a result,
he was not able to get along with his prior counsel.  (See
Exhibits "A"–"D" of Declaration of Beverly Wee Samehima.)  He
changed his mind about entering a guilty plea or going to trial
on numerous occasions, resulting in the scheduling and last
minute cancellations of his Rule 11 proceedings.  When he
ultimately entered his guilty plea, he was the last defendant in

14

his case to do so.  At that point, any opportunity he may have
had to cooperate against the other co-defendants in order to get
substantial assistance credit in connection with their guilty
pleas was lost.  This was not the result of any action by any
government agents or the prosecutor.  This was due to defendant's
inability or unwillingness to accept responsibility, and the
realities of his situation.  (Declaration of Beverly Wee
Sameshima, ¶¶ 3-7)

At no time did government counsel reject defendant's
cooperation or tell defense counsel that it did not want his
cooperation.  Agents debriefed Defendant early in the case to
assess any information he may provide.  The government gave
Defendant the benefit of the doubt with respect to the safety
valve.  Id. at ¶ 11.

Defendant claims prosecutorial misconduct premised upon
government counsel's "disparate treatment of Petitioner's
previous CJA counsel."  (See Motion, page 16.)  However, it is
unclear what the alleged disparate treatment is.[5]  Nowhere in the

---

[5]   Defendant has failed to substantiate this allegation with
any evidence other than this bald statement.  In footnote 4, page
6 of Defendant's motion he compares the instant case to one
prosecuted by AUSA Thomas Muehleck, who is currently deployed in
Iraq, charging "arbitrary and discriminatory treatment" by AUSA
Muehleck in United States v. Julie James, Cr. No. 00-00186 WJR.
Defendant asserts that this case presents a similar situation.
In James, Jerry Wilson represented Defendant Julie James; Art
Ross represented her on appeal.  James claimed that AUSA Muehleck
gave her husband, Defendant Mike Savage a more favorable plea
                                                    (continued...)

15

discussion of alleged prosecutorial misconduct is there any reference of or basis for the alleged disparate treatment. Defendant was charged with conspiracy to distribute and possess with intent to distribute 50 grams of methamphetamine based upon his conduct in accepting, transporting, opening and then attempting to dispose of a parcel he believed contained ice.  His co-defendants faced a similar charge and all entered guilty pleas to the conspiracy.  His co-defendants received downward departures because they cooperated and provided substantial assistance to the government which led to other prosecutions and convictions.  (Declaration of Beverly Wee Sameshima, ¶¶ 10-11) Defendant did not provide substantial assistance.  Accordingly, he did not receive a reduced sentence; however he was sentenced below the statutory minimum mandatory term because of the benefit of the safety valve provisions which were found applicable to him.

//

//

//

---

[5](...continued)
agreement because he was discriminating against counsel and brought a selective prosecution.  (See portions of James' Ninth Circuit opening brief and portions of the government's answering brief, attached as Exhibit "H" to Declaration of Beverly Wee Sameshima.)  Both the district court and Ninth Circuit rejected these claims.  (See Memorandum Opinion dated May 18, 2004, attached as Exhibit "I" to Declaration of Beverly Wee Sameshima.)

16

There is no legal or factual support for Defendant's claims. For all of these reasons, the government requests that his § 2255 Motion be dismissed without an evidentiary hearing.

DATED:  January 17, 2007, at Honolulu, Hawaii.

Respectfully submitted,

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


By   /s/ Beverly Wee Sameshima
  BEVERLY WEE SAMESHIMA
  Assistant U.S. Attorney

17

CERTIFICATE OF SERVICE

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

Served Electronically through CM/ECF:

Arthur Ross, Esq.        artross@inets.com

Attorney for Defendant
FELIPE RAGUINDEN DOMANGUERA

DATED:  January 17, 2007, at Honolulu, Hawaii.


    /s/ Dawn M. Aihara