IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CV. NO. 06-00580 JMS-KSC |
| | ) | CR. NO. 04-00061-02 JMS |
| Plaintiff, | ) | |
| | ) | DECLARATION OF BRANDON FLORES |
| vs. | ) | |
| | ) | |
| FELIPE RAGUINDEN DOMANGUERA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

DECLARATION OF BRANDON FLORES

I, BRANDON FLORES, upon penalty of perjury, declares and states as follows:

1. I am an attorney licensed to practice in the state of Hawaii. I am also a member of the CJA panel and have been on the panel since 2004. I was appointed as counsel of record for Felipe Raguinden Domanguera ("Domanguera") in this case on or about November 19, 2004.

2. On or about November 24, 2004, I received Domanguera's files from his prior counsel, Jerry Wilson. I reviewed the file and met with him to discuss the case and his options on approximately eight occasions. My records reflect meetings prior to his change of plea on November 24, 2004, January 5, 2005, January 27, 2005, and January 28, 2005. At the outset of our discussions, Domanguera made it clear that he did not want to go to trial in the case, but wanted the best plea possible. At the time I entered the case, the government had

already forwarded a draft plea agreement to prior counsel, Jerry Wilson.

    3. On or about December 14, 2004, I received a copy of another draft plea agreement from the government. I met with Domanguera on January 5, 2005 and January 27, 2005 to discuss the terms of the plea agreement. During these discussions, we went over the appeal waiver and its effect. Domanguera indicated that he understood the waiver. Domanguera's main concern during these discussions was the sentence he was likely to receive. We discussed the sentencing guidelines and the statutory mandatory minimum terms, which in this case was ten years. One of the issues I raised with government counsel was whether Domanguera could plead to the attempt to possess charge rather than the conspiracy. This request was rejected.

    4. During my pre-plea meetings with Domanguera, we went over the possible sentencing guidelines. At the January 5, 2005 meeting we discussed the possibility of pleading to the indictment without a plea agreement – to the charge as stated: 50 grams or more of methamphetamine and preserve the right to argue drug amounts at sentencing. During these discussions, we did cover the possible base offense levels based upon the drug quantity involved. Ultimately, we decided to enter the plea agreement with stipulations as to drug quantity and purity because it provided the client with some amount of certainty in

terms of his guideline range.  In addition, I saw no factual or legal basis for disputing the amounts.  Domanguera agreed with this approach and to the plea agreement which was executed.

   5. On January 27, 2005, I met with Domanguera a final time and we went over the plea agreement again.  During this meeting, we again covered the terms of the agreement, including the appeal waiver.  Our discussions concerning the two limited circumstances for appeal were detailed and included the situation where the sentence was higher than the guidelines or if there was a claim of ineffective assistance of counsel.  He told me he understood the terms of the appeal waiver.  During my meetings with Domanguera, it was apparent that he understood English and we were able to converse without an interpreter.  At all times I felt that he understood the terms of the plea agreement and the guidelines.

   6. On January 28, 2005, Domanguera entered his guilty plea.

   7. On March 23, 2005, Domanguera was interviewed by the Probation Office for his presentence interview.  I was present during the interview.

   8. Sometime before September 14, 2005, I received a copy of the draft presentence report.  On September 14, 2005, we met to discuss the draft presentence report.  We spoke again by telephone on September 20, 2005.  Based upon our discussions, I

filed certain objections based upon a minor role adjustment.  On September 25, 2005, I sent him copies of the presentence report, my objections and the government's sentencing statement.

      9.  On October 17, 2005, Domanguera was originally scheduled to be sentenced but the sentencing was continued due to the unavailability of the interpreter. On October 19, 2005, Domanguera was sentenced to 108 months.  After the sentencing, Domanguera was very upset with the District Court's sentence.  The only question he had for me was whether his sentence could be served in the Philippines.  At no time did he advise me that he wished to file an appeal.  Based upon our extensive discussions prior to the change of plea and to sentencing, he understood that if the court sentenced him to a term which was not higher than the advisory guidelines, he would not have a legal basis to appeal. Based upon my contacts and conversations with him, he never communicated any dissatisfaction with my representation. After sentencing, I did not receive any communications or contacts from him until shortly after April 3, 2006, when I received a copy of Domanguera's March 20, 2006 letter to me from Judge J. Michael Seabright.  Prior to that time, I did not receive Domanguera's letter.  In response, I wrote him on April 27, 2006.  A copy of my letter is attached to the Motion as Exhibit "G."

10. As set forth in my letter, Domanguera did not inform me either at sentencing, or thereafter, that he wished to appeal. The March 20, 2006 letter which I received from the court was the first notice I had that Domanguera wished to file an appeal.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RELIEF.

DATED: January 16, 2007, at Honolulu, Hawaii.

       /s/ Brandon Flores
       BRANDON FLORES