ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AO 245B (Rev. 12/03) Sheet 1 - Judgment in a Criminal Case

# United States District Court
## District of Hawaii

OCT 2 7 2005

at ___7___ o'clock and ___ min.___ M
SUE BEITIA, CLERK

UNITED STATES OF AMERICA
v.
**FELIPE RAGUINDEN DOMANGUERA, aka**
**"Phil" and "Barber"**

**JUDGMENT IN A CRIMINAL CASE**
(For Offenses Committed On or After November 1, 1987)
Case Number:    **1:04CR00061-002**
USM Number:    **91108-022**
Brandon K. Flores, Esq.
Defendant's Attorney

## THE DEFENDANT:

[✔]    pleaded guilty to count(s): 1 of the Third Superseding Indictment .
[ ]    pleaded nolo contendere to counts(s) ___ which was accepted by the court.
[ ]    was found guilty on count(s) ___ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 U.S.C. §§841(a)(1), 841(b)(1)(A), and 846 | Conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine | 01/22/2004 | 1 |

The defendant is sentenced as provided in pages 2 through __6__ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[ ]    The defendant has been found not guilty on counts(s) ___ and is discharged as to such count(s).

[✔]    Count(s) 2 of the Third Superseding of Indictment  (is)(are) dismissed on the motion of the United States.

It is further ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

October 19, 2005
Date of Imposition of Judgment

Signature of Judicial Officer

**J. MICHAEL SEABRIGHT**, United States District Judge
Name & Title of Judicial Officer

OCT 2 6 2005
Date

EXHIBIT "G"

AO 245B (Rev. 12/03)  Sheet 2 - Imprisonment

| | | |
|---|---|---|
| CASE NUMBER: | 1:04CR00061-002 | Judgment - Page 2 of 6 |
| DEFENDANT: | FELIPE RAGUINDEN DOMANGUERA, aka "Phil" and "Barber" | |

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 108 MONTHS .

[✔]     The court makes the following recommendations to the Bureau of Prisons:
1) Lompoc, California.
That the defendant participate in the 500 Hour Comprehensive Drug Treatment Program, drug treatment, educational/vocational training programs.

[✔]     The defendant is remanded to the custody of the United States Marshal.

[ ]     The defendant shall surrender to the United States Marshal for this district.
[ ] at ___ on ___.
[ ] as notified by the United States Marshal.

[ ]     The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:
[ ] before _ on ___.
[ ] as notified by the United States Marshal.
[ ] as notified by the Probation or Pretrial Services Officer.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on_____ to _____

at _____ , with a certified copy of this judgment.


_____
UNITED STATES MARSHAL


By  _____
Deputy U.S.  Marshal

AO 245B (Rev. 12/03)  Sheet 3 - Supervised Release

| | | |
|---|---|---|
| CASE NUMBER: | 1:04CR00061-002 | Judgment - Page 3 of 6 |
| DEFENDANT: | FELIPE RAGUINDEN DOMANGUERA, aka "Phil" and "Barber" | |

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of 4 YEARS .

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of commencement of supervision and at least two periodic drug tests thereafter but no more than 15 valid drug tests per month during the term of supervision.

[ ]     The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check if applicable.)

[✔]     The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon (Check if applicable.)

[✔]     The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check if applicable.)

[ ]     The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check if applicable.)

[ ]     The defendant shall participate in an approved program for domestic violence. (Check if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)     the defendant shall not leave the judicial district without permission of the court or probation officer;
2)     the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3)     the defendant shall answer truthfully all inquiries by the probation officer and follow instructions of the probation officer;
4)     the defendant shall support his or her dependants and meet other family responsibilities;
5)     the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6)     the defendant shall notify the probation officer ten days prior to any change in residence or employment;
7)     the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8)     the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)     the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11)    the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B (Rev. 12/03)  Sheet 3 - Supervised Release

CASE NUMBER:       1:04CR00061-002                                              Judgment - Page 4 of 6
DEFENDANT:         FELIPE RAGUINDEN DOMANGUERA, aka "Phil" and "Barber"

## SPECIAL CONDITIONS OF SUPERVISION

1.     That the defendant shall participate and comply with substance abuse treatment which
       includes drug and alcohol testing in a program approved by the Probation Office.  The
       defendant is to refrain from the possession and/or use of alcohol while participating in
       substance abuse treatment.

2.     That the defendant execute all financial disclosure forms requested by the Probation
       Office and provide access to any requested financial information.

3.     That the defendant participate in mental health program at the discretion and direction of
       the Probation Office.

4.     That the defendant submit to removal proceedings, including deportation or exclusion as
       required by the Department of Homeland Security.  The defendant shall not enter the
       United States without proper authorization.

5.     That the defendant shall submit his person, residence, place of employment, or vehicle to a
       search conducted by the U.S. Probation Office at a reasonable time and in a reasonable
       manner, based upon reasonable suspicion of contraband or evidence of a violation of a
       condition of supervision.  Failure to submit to a search may be grounds for revocation.
       The defendant shall warn any other resident that the premises may be subject to search
       pursuant to this condition.

AO 245 S (Rev. 12/03) Sheet 5, Part B - Criminal Monetary Penalties

| | | | |
|---|---|---|---|
| CASE NUMBER: | 1:04CR00061-002 | | Judgment - Page 5 of 6 |
| DEFENDANT: | FELIPE RAGUINDEN DOMANGUERA, aka "Phil" and "Barber" | | |

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $ 100.00 | $ | $ |

[ ]   The determination of restitution is deferred until    . An *Amended Judgment in a Criminal Case* (AO245C) will be entered after such a determination.

[ ]   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. §3664(i), all non-federal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| **TOTALS** | $ _ | $ _ | |

[ ]   Restitution amount ordered pursuant to plea agreement   $ _

[ ]   The defendant must pay interest on restitution and a fine of more than $2500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. §3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. §3612(g).

[ ]   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

[ ]      the interest requirement is waived for the      [ ] fine      [ ] restitution

[ ]      the interest requirement for the   [ ] fine      [ ] restitution is modified as follows:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

AO 245 S (Rev. 12/03)  Sheet 5, Part B - Criminal Monetary Penalties

| CASE NUMBER: | 1:04CR00061-002 | Judgment - Page 6 of 6 |
|---|---|---|
| DEFENDANT: | FELIPE RAGUINDEN DOMANGUERA, aka "Phil" and "Barber" | |

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A    [ ]    Lump sum payment of $ _ due immediately, balance due
         [ ]      not later than _ , or
         [ ]      in accordance    [ ] C,    [ ] D,    [ ] E, or  [ ] F below, or

B    [✔]    Payment to begin immediately (may be combined with    [ ] C,    [ ] D, or  [ ] F below); or

C    [ ]    Payment in equal _ (e.g., weekly, monthly, quarterly) installments of $ _ over a period of _ (e.g., months or years), to commence _ (e.g., 30 or 60 days) after the date of this judgment ; or

D    [ ]    Payment in equal _ (e.g., weekly, monthly, quarterly) installments of $ _ over a period of _ (e.g., months or years), to commence _ (e.g., 30 or 60 days) after the release from imprisonment to a term of supervision; or

E    [ ]    Payment during the term of supervised release will commence within _ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F    [ ]    Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the Clerk of the Court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

[ ]    Joint and Several

      Defendant and Co-Defendant Names and Case Numbers (including defendant number, Total Amount, Joint and Several Amount, and corresponding pay, if appropriate.

[ ]    The defendant shall pay the cost of prosecution.

[ ]    The defendant shall pay the following court cost(s):

[ ]    The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.


CASE NUMBER:        1:04CR00061-002                          DATE: October 19, 2005
DEFENDANT:          FELIPE RAGUINDEN DOMANGUERA, aka "Phil" and "Barber"

| Social Security: # | Date of Birth: | Home address: | Mailing address: |
|---|---|---|---|
| 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 | 12/3/1960 | 1921 Honey Lane | 1921 Honey Lane |
| | | Honolulu, HI 96819 | Honolulu, HI 96819 |

# STATEMENT OF REASONS
## (Not for Public Disclosure)

[ ]   THE COURT ADOPTS THE PRESENTENCE REPORT AND GUIDELINE APPLICATIONS WITHOUT CHANGE.

## OR

[✔]   THE COURT ADOPTS THE PRESENTENCE REPORT AND GUIDELINE APPLICATIONS BUT WITH THESE CHANGES:

    [✔]   **Chapter Two of the U.S.S.G. Manual** determinations by court (including changes to base offense level or specific offense characteristics: The Court determined that the defendant has satisfied the requirements of the "safety valve" provisions pursuant to 18 U.S.C. Sections 3553(f)(1)-(5) and U.S.S.G. Section 5C1.2.

    [ ]   **Chapter Three of the U.S.S.G. Manual** adjustment determinations by court (including changes to victim-related adjustments, role in the offense, obstruction of justice, multiple counts, or acceptance of responsibility):

    [ ]   **Chapter Four of the U.S.S.G. Manual** determinations by court (including changes to criminal history category or scores, career offender, or criminal livelihood determinations):

[ ]   **THE COURT ADOPTS THE PRESENTENCE REPORT WITH THESE COMMENTS OR FINDINGS** (including comments or factual findings concerning certain information in the presentence report that the Federal Bureau of Prisons may rely on when it makes inmate classification, designation, or programming decisions. Specify court comments or findings, including paragraphs in the presentence report.)

### GUIDELINE RANGE DETERMINED BY THE COURT (BEFORE DEPARTURES):

Total Offense Level:            31

Criminal History Category:     I

Imprisonment Range:            108  to 135  months

Supervised Release Range:      3  to 5  years

Fine Range:                    $ 15,000  to $ 4,000,000

[✔]   Fine waived or below the guideline range because of inability to pay.

[✔]   **THE SENTENCE IS WITHIN THE GUIDELINE RANGE, THAT RANGE DOES NOT EXCEED 24 MONTHS, AND THE COURT FINDS NO REASON TO DEPART.**

## OR

[ ]   **THE SENTENCE IS WITHIN A GUIDELINE RANGE, THAT RANGE EXCEEDS 24 MONTHS, AND THE SPECIFIC SENTENCE IS IMPOSED FOR THESE REASONS:**

AO 245B (Rev. 12/03) Sheet 6 - Statement _. Reason                                    (Not For Public Disclosure)

CASE NUMBER:      1:04CR00061-002                                    DATE: October 19, 2005
DEFENDANT:        FELIPE RAGUINDEN DOMANGUERA, aka "Phil" and "Barber"

## RESTITUTION DETERMINATIONS

Total Amount of Restitution:          $ N/A
[ ]   For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because the
      number of identifiable victims is so large as to make restitution impracticable under 18 U.S.C. § 2663A(c)(3)(A).

[ ]   For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because
      determining complex issues of fact and relating them to the cause or amount of the victims' losses would complicate or
      prolong the sentencing process to agree that the need to provide restitution to any victim would be outweighed by the
      burden on the sentencing process under 18 U.S.C. § 3663A(c)(3)(B).

[ ]   For other offenses for which restitution is authorized under 18 U.S.C. § 3663 and/or required by the sentencing guidelines,
      restitution is not ordered because the complication and prolongation of the sentencing process resulting from the
      fashioning of a restitution order outweigh the need to provide restitution to any victims under 18 U.S.C. § 3663(a)(1)(B)(ii).

[ ]   Restitution is not ordered for other reasons:

[ ]   Partial Restitution is ordered under 18 U.S.C. § 3663(c) for these reasons: 0

## DEPARTURE (Check all that apply)

[ ]   The sentence departs below the guideline range for the following reasons; or
[ ]   The sentence departs above the guideline range for the following reasons:

   **Pursuant to a Plea Agreement**
   [ ]   based on 5K1.1 motion of the government based on the defendant's substantial assistance;
   [ ]   based on a government motion pursuant to an early disposition program;
   [ ]   based on a binding plea agreement for departure which the court has accepted (cite below reason, if applicable);
   [ ]   based on a plea agreement which cites the below reason for departure, which the court finds to be justified; or
   [ ]   based on a plea agreement which states that the government will not oppose a defense departure motion and cites
         the below reason.

   **Pursuant to a Motion Not Addressed in a Plea Agreement**
   [ ]   pursuant to a 5K1.1 motion of the government based on the defendant's substantial assistance;
   [ ]   pursuant to a government motion based on the below reason for departure; or
   [ ]   pursuant to a defense motion based on the below reason for departure to which the government has not objected; or
   [ ]   pursuant to a defense motion based on the below reason for departure to which the government has objected.
   [ ]   Other than plea agreement or motion by tha parties based on the below reason for departure.

## Reason(s) for Departure

| | | | | | |
|---|---|---|---|---|---|
| [ ] | 4A1.3 Criminal History Adequecy (explain) | [ ] | 5K2.8  Extreme Conduct | [ ] | 5K2.16 Voluntary Disclosure of Offense |
| [ ] | 5K2.0 Aggravating or Mitigating | [ ] | 5K2.9  Criminel Purpose | [ ] | 5K2.17 High-Capacity Semiautomatic Firearm |
| | Circumstances (explain): | [ ] | 5K2.10 Victim's Conduct | [ ] | 5K2.18 Violent Street Gang |
| [ ] | 5K2.1 Death | [ ] | 5K2.11 Lesser Herm | [ ] | 5K2.20 Aberrant Behavior |
| [ ] | 5K2.2 Physical Injury | [ ] | 5K2.12 Coercion and Duress | [ ] | 5K2.21 Dismissed and Uncharged Conduct |
| [ ] | 5K2.3 Extreme Psychological Injury | [ ] | 5K2.13 Diminished Cepacity | [ ] | 5K2.22 Age or Health of Sex Offenders |
| [ ] | 5K2.4 Abduction or Unlawful Restraint | [ ] | 5K2.14 Public Welfare | [ ] | 5K2.23 Discharged Terms of Imprisonment |
| [ ] | 5K2.5 Property Damage or Loss | | | [ ] | 5K3.1  Early Disposition, "fast track" Program |
| [ ] | 5K2.6 Weapons and Dangerous Instruments | | | | |
| [ ] | 5K2.7 Disruption of Government Function | | | | |

[ ]   Other (e.g., 2B.1, commentary, 5H1.1-5H1.6 or 5H1.11)(explain and state guideline and/or statutory basis).

AO 245B (Rev. 12/03) Sheet 6 - Statement of Reason                                    (Not For Public Disclosure)

CASE NUMBER:        1:04CR00061-002                                    DATE: October 19, 2005
DEFENDANT:          FELIPE RAGUINDEN DOMANGUERA, aka "Phil" and "Barber"

                                                          October 19, 2005
                                        _____
                                        Date of Imposition of Judgment

                                        _____
                                        Signature of Judge

                                        **J. MICHAEL SEABRIGHT**, United States District Judge
                                        _____
                                        Name and Title of Judge

                                                     OCT 2 6 2005
                                        _____
                                        Date Signed

1                IN THE UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF HAWAII

3                              )
      UNITED STATES OF AMERICA,    )  CR 04-00061 JMS 02
4                              )
              Plaintiff,        )  Honolulu, Hawaii
5        vs.                   )  October 19, 2005
                              )  9:00 A.M.
6     FELIPE RAGUINDEN DOMANGUERA,  )
                              )  Sentencing to Count 3 of
7              Defendant.       )  the Third Superseding
                              )  Indictment
8     _____ )

9
                     TRANSCRIPT OF PROCEEDINGS
10        BEFORE THE HONORABLE J. MICHAEL SEABRIGHT
                  UNITED STATES DISTRICT JUDGE
11

12    APPEARANCES:

13    For the Government:         BEVERLY WEE SAMESHIMA
                                  Office of the U.S. Attorney
14                                PJKK Federal Bldg.
                                  300 Ala Moana Blvd. Ste. 6100
15                                Honolulu, HI 96850

16    For the Defendant:          BRANDON K. FLORES
                                  Ocean View Ctr.
17                                707 Richards St., Ste. 516
                                  Honolulu, HI 96813
18
      Also Present:               ANNE M. SHIMOKAWA
19                                U.S. Probation Office
                                  300 Ala Moana Blvd. Ste C-110
20                                Honolulu, HI 96813

21    Official Court Reporter:    Debra Kekuna Chun, RPR, CRR
                                  United States District Court
22                                300 Ala Moana Blvd. Ste. C285
                                  Honolulu, HI 96850
23                                (808) 534-0667

24
      Proceedings recorded by machine shorthand, transcript produced
25    with computer-aided transcription (CAT).

1    WEDNESDAY, OCTOBER 19, 2005        9:09 O'CLOCK A.M.

2              THE CLERK:  Criminal Number 04-00061 JMS, United

3    States of America versus, defendant 2, Felipe R. Domanguera.

4    This case is called for Sentencing as to Count 3 of the Third

5    Superseding Indictment.

6              MS. SAMESHIMA:  Yes.  Good morning, Your Honor.

7    Beverly Wee Sameshima on behalf of the United States.

8              THE COURT:  Yes.  Good morning.

9              MR. FLORES:  Good morning, Your Honor.  Brandon

10   Flores present on behalf of Felipe Domanguera, who is also

11   present, along with court interpreter Victor Dalera.

12             THE COURT:  Okay.  Good morning.

13             Let me first ask Mr. Flores and Mr. Domanguera if

14   both of you have had a full and fair opportunity to review and

15   discuss the Presentence Investigation Report.

16             MR. FLORES:  Yes, Your Honor.

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  And have you made all the factual and

19   legal objections that you intend to make at this time?

20             MR. FLORES:  Yes, Your Honor.

21             THE COURT:  Okay.  You may be seated.

22             On January 28th of 2005 the defendant pled guilty to

23   count 1 of the indictment, charging him with conspiracy to

24   distribute and possess with intent to distribute 50 grams or

25   more of methamphetamine.  The court has reviewed the

1    Presentence Investigation Report and does accept the

2    11(c)(1)(A) plea agreement because it is satisfied that the

3    agreement adequately reflects the seriousness of the actual

4    offense behavior and that accepting the agreement will not

5    undermine the statutory purposes of sentencing.

6          Now, the court is placing the presentence report in

7    the record under seal.  If an appeal is taken, counsel will

8    have access to all of the report, other than the confidential

9    recommendation section.

10          Now, it's the court's understanding that neither

11    party has any objection to the factual statements in the

12    report.  Is that correct?

13          MR. FLORES:  Yes, Your Honor.

14          MS. SAMESHIMA:  That's correct, Your Honor.  It's

15    just that I guess -- no, that's correct.

16          THE COURT:  Okay.  There being no objections to the

17    factual statements contained in the Presentence Investigation

18    Report, the court does adopt those statements as its own

19    Findings of Fact.

20          Now, as to conclusions as to the guideline

21    applications, Miss Sameshima, I understand the government has

22    no objections; is that --

23          MS. SAMESHIMA:  That's correct, Your Honor.

24          THE COURT:  Now, the defense has objected to the

25    guideline calculations, claiming that he should receive a

```
 1    two-level adjustment.  Is that right, Mr. Flores?
 2              MR. FLORES:  Yes, Your Honor.  We believe he's
 3    entitled, based on the totality of the circumstances in this
 4    case, to an adjustment for a minor role.
 5              THE COURT:  Okay.  So, as I understand it, you're
 6    asking for two-level minor participant reduction under
 7    guideline 3B1.2 and you also so say under 2D1.1(a)(3) that the
 8    guidelines would be capped at 30.
 9              MR. FLORES:  That's correct.
10              THE COURT:  Both of those, as I understand it, are
11    premised, though, on whether he's qualified as a minor
12    participant.
13              MR. FLORES:  Yes, Your Honor.
14              THE COURT:  I will hear any argument you want to
15    provide at this time on that issue.
16              MR. FLORES:  Well, Your Honor, based on what's
17    available in the record what we know about this case, it
18    appears that this scheme was set up for parcels of
19    methamphetamine to be sent from the mainland to Hawai'i via
20    FedEx.  Co-defendant Jaime Agtag has indicated that on at least
21    10 prior occasions he's received these parcels and has paid
22    approximately 400 or $500 to receive them and deliver them to a
23    Dan Langamin.  Also co-defendant Christopher Mabanag indicated
24    he's done this on five -- about five prior occasions.
25              THE COURT:  But your client -- there are no drugs
```

1    from prior occasions that are being included in relevant

2    conduct here; right?

3            MR. FLORES:  No, Your Honor.

4            THE COURT:  So I mean you're saying that this is a

5    broader conspiracy perhaps --

6            MR. FLORES:  What I'm saying --

7            THE COURT:  -- but there is no evidence before the

8    court that your client's guideline range is increased based on

9    anything other than what occurred on that one day.

10           MR. FLORES:  That's correct.  But I guess, when you

11   look at the way it was set up, it's clear that it was intended

12   for -- in this incident for Mr. Agtag to receive the parcel and

13   deliver it.  My client Mr. Domanguera just happened to be at

14   the residence when it was received and, basically, went along

15   with them for a ride.  He suspected it contained

16   methamphetamine, and, when they, I guess, realized they were

17   being followed and they left the area, leaving Mr. Domanguera

18   with the package, the curiosity took the better of him.  He

19   opened it up.  He saw it contained methamphetamine.  And then,

20   you know, when the police came knocking at his door, he

21   basically panicked and tried to flush it down the toilet.

22           But I mean, when you look at he's not the buyer in

23   this transaction, he's not the seller, he didn't package the

24   items, he didn't send the items, he didn't sign for the item,

25   all of that -- everything that we know about this case

1    indicates that this is probably the one and only time he's been
2    involved in this scheme that's been going on, and he was not
3    even actually one of the major participants. He really didn't
4    have a role in it other than to ride along with them when it
5    was received. I guess ostensibly they were going to be
6    delivering it to Mr. Langamin, but along the way, realizing
7    that they were being followed, the plan, basically, flew out
8    the window and he was stuck holding the package.

9        So I mean looking at that, Your Honor, and given that
10   in prior cases that I've had before this court where, you know,
11   basically, someone just signs for a package and, you know, does
12   nothing more, you know, that client got an adjustment for a
13   minor role. And I think in all fairness to Mr. Domanguera, you
14   know, he should also get that same -- that same treatment.

15       THE COURT: Okay. I understand your argument. Let
16   me tell you the one thing that concerns me somewhat.

17       I'm looking at the plea agreement, and paragraph 8 of
18   the plea agreement begins by saying, "Defendant admits the
19   following facts," and then there are various facts. And
20   paragraph D states as follows: Defendant admits that he knew
21   there was methamphetamine contained in the parcel, that he
22   opened the parcel, intending to remove its contents and
23   distribute it to others.

24       That language that defendant admitted to as set forth
25   in the plea agreement is at odds with, it appears, the position

1  that you're now taking.

2      MR. FLORES:  Well, and that sort of came up also at

3  the change of plea.  And, basically, Mr. Domanguera knew that

4  the methamphetamine was going to be distributed and he -- I

5  think he admitted in the change of plea that he was intending,

6  you know, he knew that the package was going to go back to

7  Agtag and he knew it was going to be delivered to somebody else

8  and he knew that the drugs were going to be distributed; so in

9  that case, you know, he was aware that the drugs were there,

10  you know, to be distributed.  And his admission was that he

11  received it, he wanted, basically -- as a drug addict, he

12  wanted to take some of it for his own personal use, but he was

13  intending to return the rest of it to the co-defendants, and he

14  knew that they were going to go ahead and distribute it to

15  other people.

16      THE COURT:  Okay.

17      MR. FLORES:  So, Your Honor, I mean based on that,

18  based on the fact that his criminal history is real minimal and

19  there's no indication that he ever took part in anything like

20  this before, this was a one-time deal and, clearly, he was not,

21  you know, one of the major players in this scheme, we're

22  asking, Judge, for the adjustment for the minor role.

23      MS. SAMESHIMA:  Your Honor, of course, the test is

24  whether he's substantially less culpable than the other

25  co-conspirators.  And in this case, although he had a slightly

1   different role, he wasn't substantially less culpable.

2        The government premised its safety valve on the fact

3   that after the statements that were made that are contained in

4   the presentence report we debriefed Mr. Domanguera, and he

5   fully admitted that he knew there was methamphetamine in that

6   parcel.  In fact, he was familiar with and he knew Mr.

7   Langamin.  He also cut Mr. Langamin's hair.  He was a barber,

8   and he cut these other defendants' hair.  And he had used ice

9   and he had purchased ice from the co-defendants before, and he

10  was at that house in order to obtain ice.

11       When that package arrived, he knew what was in the

12  package, and at some point the co-defendant said, "We've got to

13  take it out of this house.  Can we take it to your house."  He

14  agreed to do that, and they drove and they transported the

15  package of three and a half pounds of methamphetamine to Mr.

16  Domanguera's house.

17       At some point they got hinky because there was a

18  helicopter, and they felt they were being followed.  And Mr.

19  Agtag and Mr. Mabanag -- no, not Mr. Mabanag.  Mr. Agtag and

20  Mr. Tauyan left and went back on foot to the original house.

21  Mr. Domanguera, knowing there was ice in that package, took it

22  into his house.  And there was a beeper within that; there was

23  a controlled delivery occurring.

24       When the beeper went off, the agents went and located

25  the unit at which Mr. Domanguera was living and had the parcel.

1   They saw Mr. Domanguera in the apartment.  They announced
2   themselves.  Instead of obeying their command to come to the
3   door, he went into the bathroom.  They could hear flushing
4   noises, and that's what led to the exigent circumstances where
5   they rushed into the house.  They found portions of the
6   pseudomethamphetamine that were within that parcel in the
7   toilet bowl, various contents of the packages were in a rubbish
8   can and around, and it was clear Mr. Domanguera knew that there
9   were drugs in there.  He intended to get some of it, and he
10  knew that he was going to give -- that the parcel was intended
11  for someone else.

12          So he does not have a minor role in this scheme.  It
13  may be different from the other defendants in that he was not
14  one of the addressees who actually received it, but at that
15  point he became a full participant in that conspiracy.  And,
16  Your Honor, it's a lot of drugs, and that's one of the factors
17  that the court can also look at to see whether he is, in fact,
18  a minor player or not.

19          THE COURT:  Okay.  Anything else, Mr. Flores?

20          MR. FLORES:  I just, I guess, would note that I
21  believe the two other co-defendants, who have already pled, are
22  getting their sentencing postponed because they are cooperating
23  with the government in ongoing investigation.  And I think,
24  when you look at Mr. Domanguera, the government really has no
25  interest in him, my belief, because he really -- he's not a

1    major player in any of this kind of activity.  You know, the

2    two other co-defendants obviously have more information;

3    they're more involved in these sort of transactions than Mr.

4    Domanguera.  Clearly, in this one-time opportunity he really

5    doesn't have much to provide to the government.  So, Your

6    Honor, we're asking that the court recognize this and give him

7    a minor role adjustment.

8              MR. FLORES:  I believe Mr. Domanguera also wants to

9    address the court.  I don't know if you want to take his

10   statement now or later on in the sentencing, but he does wish

11   to address the court.

12             THE COURT:  He can speak now, if he wishes.

13             MR. FLORES:  Stand up.

14             THE DEFENDANT (In English):  Good morning, Your

15   Honor.

16             THE DEFENDANT (Through Interpreter):  Your Honor, I

17   just want to make it clear that of the incident that happened,

18   and I want the truth -- and I want the truth to come out.

19             What happened on the date, I went to the place.  I

20   went at that place and wrong time and wrong place to cut the

21   hair.  After I cut the hair I saw Agtag.  He signed a paper

22   that he receive a parcel.  And they entered a room in the

23   garage, and I was waiting outside.  They came out and they ask

24   me if they could open the house inside our house, but they

25   never told me that there was ice inside.

1                I receive the box --

2                THE DEFENDANT (In English):  No.

3                THE DEFENDANT (Through Interpreter):  I was amenable

4    to go to the house.  When we were on our way going our place, I

5    was reading a newspaper at the back, and the two were talking

6    in the front.  And I heard it that there was ice in the box.

7    And Agtag was calling the owner of the box so they would

8    deliver it.

9                After that, when we reach our place, they park the

10   car.  They park the car.  Then they ran away.  Then the box was

11   left.  Since I was curious I took the box.  I open what's

12   inside the box.  When I open it, there were some people who

13   arrived.  I don't know them.

14               THE DEFENDANT (In English):  There's only one.

15               THE DEFENDANT (Through Interpreter):  There is only

16   one person who arrive, and I don't know him.

17               He ask me where are my two companions were.  I don't

18   know because they ran away.  I ask him what's the reason.  He

19   said he hit the car that ran away.  Because I was afraid,

20   frightened, I brought the box in the toilet.  I flush it.  When

21   I was flushing, that's the time when the police shouted, and he

22   said open the door.

23               Your Honor, my situation, I will not stand here if

24   it's not true that I am telling the truth.  What happened was

25   an entrapment.  After they receive the box they see inside.

1    They were planning that it was an entrapment, and they know

2    what will happen to them, and they know what's inside the box.

3    And they needed -- they need the one person so that they can

4    get away.

5         Your Honor, it's clear, if they are sincere in open

6    the box inside our house, how come they ran away?  When still

7    they said that there's ice inside it, they know that I'm a

8    chronic addict, and they know that I'll open it.

9         THE DEFENDANT (In English):  I'm an addict.

10        THE DEFENDANT (Through Interpreter):  My situation is

11   hard, Your Honor.  I only went there to cut their hair.  Now

12   they won't pay me.  I never had any penny.  So that I can earn

13   money.  I cut their hair, and that's what happened.  I didn't

14   know where the box came from.

15        So, Your Honor, it's very clear, Your Honor, I have

16   to ask forgiveness for our mistakes.  I should not have touched

17   it.  I should not have touch it, but -- because it's not mine.

18        THE COURT:  I'm sorry.  Can you repeat that.  I

19   didn't hear.

20        THE INTERPRETER:  I should not have touch it because

21   it is not mine.

22        THE DEFENDANT (Through Interpreter):  I accept my

23   mistake and whatever you will --

24        THE DEFENDANT (In English):  Forgiveness.

25        THE DEFENDANT (Through Interpreter):  If you will

1    forgive me, I'll accept everything so that I'll have a new

2    life.

3         And what I want is to seek the truth and justice.  So

4    that justice that's given to me, my -- I'll be given -- I'll be

5    a free man.  So that I'll be respected by other people and in

6    the community.

7         THE COURT:  Okay.  Thank you very much.

8         Miss Sameshima.

9         MS. SAMESHIMA:  No.  I was just thinking, Your Honor,

10   that he came very close to my taking the position that he

11   doesn't qualify for safety valve, but I'm not going to make

12   that argument.

13        I mean, I think the evidence is very clear he knew

14   what was in that box, and he intended to take some of it and

15   then give it back, and he admitted that at his change of plea.

16   And now he has all these excuses as to what he did and what he

17   didn't know, and the government does have a problem with

18   that.

19        THE COURT:  Okay.

20        MR. FLORES:  Judge, I think he said the exact same

21   thing just now.  He knew that there was ice in the box, and, as

22   an addict, he wanted to take some.  So he hasn't said anything

23   inconsistent with his change of plea at all, Your Honor.

24        THE COURT:  All right.  Well, looking at 3B1.2 it's

25   clear, first of all, that he is entitled to a potential

1    reduction even though he only participated in this one deal and

2    there may have been a bigger conspiracy ongoing.  In other

3    words, the fact that he's only held responsible for the amount

4    of drugs on one particular day does not make him not entitled

5    to a reduction for role in the offense under the guidelines.

6         However, the application notes make it clear that the

7    section provides for an adjustment where a defendant is

8    substantially less culpable than the average participant, and

9    so that's what the court really has to look at in this context.

10         And then looking at subsection (b), which is what we

11    have here, it applies to a defendant who is less culpable than

12    most other participants but whose role could not be described

13    as minimal; that is, only as minor.

14         I think from the facts before the court it's clear

15    that the defendant understood what was in the box and clearly

16    understood what was intended to happen with those drugs.  He

17    himself was a drug addict.  He understood the game.  He knew

18    what was going on here.  He knew that those drugs were to be

19    distributed for others to use.  And it may be initially he only

20    wanted to get some drugs for himself.  The problem the court

21    has is what he ultimately did, and that is the attempt to

22    destroy the drugs.

23         He has admitted, obviously, of participation with

24    these others in understanding what the intent of the group was;

25    that is, to distribute the drugs.  And he admitted apparently

```
 1    in the change of plea -- although, I wasn't here -- and what
 2    I've heard today and what you've said, Mr. Flores.  But the
 3    presentence investigation report reflects that after the
 4    package was delivered Mr. Agtag and Tauyan and the defendant
 5    then drove to the defendant's apartment.  They weren't going
 6    somewhere else; they were going to his place.  And,
 7    apparently -- and it seems to be just total coincidence as far
 8    as I can tell.  There's a helicopter in the air.
 9              Which was not law enforcement; is that right, Miss
10    Sameshima?
11              MS. SAMESHIMA:  Actually, it was law enforcement.
12              THE COURT:  Oh, it was law enforcement.  Then it
13    wasn't coincidence.  All right.  So they got it right that
14    there was something going on, then.  I thought it was just a
15    vehicle that was --
16              MS. SAMESHIMA:  No, no, Your Honor.  It was law
17    enforcement.
18              THE COURT:  But in any event, when the two others
19    left the area, defendant exited the vehicle, carrying a bag,
20    which I think there's only one potential reading, which is that
21    that bag contained the drugs.  And he went into his apartment,
22    and then he attempted to destroy the drugs by flushing them
23    down the toilet.  And I think that's the fact really that will
24    preclude in my view an application of two levels for minor
25    role.
```

1    So I'm going to deny the minor role adjustment, based
2    on the extent of his knowledge and understanding as to the
3    purpose of what was happening with his co-defendants that day.
4    And, although that alone -- if that's all I had, I might be
5    tempted, Mr. Flores, to rule for you on this; in other words,
6    if it wasn't subsequent events and the attempts to destroy the
7    drugs then afterwards.  But I think that attempt to destroy the
8    drugs really precludes me from applying the two-level
9    reduction.

10   So with that the court adopts the conclusions as to
11   the applicable guidelines contained in the presentence report
12   and resolves the objection, as I said, which is that he is not
13   entitled to the two-level reduction.

14   I understand there's no dispute as to safety valve.
15   Is that right?

16       MS. SAMESHIMA:  That's correct, Your Honor.

17       MR. FLORES:  Yes, Your Honor.

18       THE COURT:  So with that the court's understanding is
19   that the applicable guidelines are a total offense level 31,
20   criminal history category 1.  The statutory maximums for this
21   offense are 10 years to life, probation is not applicable,
22   supervised release of five years to life, and a fine of four
23   million -- up to $4 million.  The advisory guidelines call for
24   108 to 135 months, three to five years of supervised release,
25   and a fine of 14,500 to four million.

1          Do both counsel concur with that?

2          MS. SAMESHIMA:  Yes, Your Honor.

3          MR. FLORES:  Yes, Your Honor.

4          THE COURT:  Is there anything further, then, anyone

5     wants to say before I go on to actually state my intended

6     sentence?

7          MR. FLORES:  Your Honor, given the court's ruling,

8     understand that, you know, the guideline advisory level is 108

9     months is the low end, and we're asking -- obviously asking the

10    court either for the low end or even if the court could in its

11    discretion, given what it knows about this case, you know,

12    depart -- I mean go less than even that, Your Honor.

13         Mr. Domanguera, like I said, has no prior criminal

14    convictions.  He's facing deportation at the end of his

15    sentence.  His whole family lives here in Hawai'i, and they all

16    became naturalized citizens.  Unfortunately, he did not, and

17    because of that once his sentence is done he's going to be

18    going back to the Philippines and never to be allowed back in

19    the United States.

20         The court understands our position as far as this

21    being the wrong place at the wrong time.  He was a drug addict,

22    and that addiction got the better of him in this incident, but

23    we're asking that this one incident not be judged too harshly

24    as far as Mr. Domanguera is concerned.

25         His family is present in the gallery, and I believe

1    his brother Jay wanted to address the court, too, before

2    sentence is imposed, if the court will allow it.

3              THE COURT:  Briefly.

4              MR. JAY DOMANGUERA:  Good morning, Your Honor.

5              THE COURT:  You're going to have to come forward and

6    speak into a microphone, sir.

7              You can stand right up here at the lectern.

8              MR. JAY DOMANGUERA:  Good morning, Your Honor.

9              THE COURT:  Good morning.

10             MR. JAY DOMANGUERA:  I'm Jay Domanguera, and I'm the

11   youngest brother of Felipe.  I'm here with the strength and

12   love of our Jesus Christ.  I'm here today asking your good

13   court to please be lenient toward my brother's judgment.  My

14   brother experience 21 months in jail, and in my heart this done

15   two years is fair enough for the government and for my brother

16   and for my family.  I beg you.

17             THE COURT:  Okay.  Thank you.

18             MR. JAY DOMANGUERA:  Thank you.

19             THE COURT:  Miss Sameshima.

20             MS. SAMESHIMA:  Your Honor, I just urge the court to

21   stay within the advisory guidelines and sentence him at the low

22   end of those advisory guidelines.  This is not the type of case

23   I think that warrants the court departing from those

24   guidelines, even though the court does have that discretion.

25             THE COURT:  Okay.  The court will state the intended

1   sentence at this time and then allow counsel to state any

2   objections they have to the intended sentence.

3          The court intends to impose a sentence of 180 months

4   of incarceration, four years of supervised release, no fine as

5   the court does not believe that the defendant has the financial

6   ability to pay a fine or pay for any or part of the costs of

7   incarceration or supervised release.  Restitution is not

8   applicable.  A hundred dollar special assessment and

9   supervision conditions as follows:

10         1.   The defendant shall abide by the standard

11   conditions of supervision.

12         2.   That he not commit any crimes, federal, state, or

13   local.

14         3.   He not possess illegal controlled substances.

15         4.   That he cooperate in the collection of DNA as

16   directed by the Probation Office.

17         5.   That he shall refrain from any unlawful use of a

18   controlled substance.  He shall submit to one drug test within

19   15 days of commencement of supervision and at least two drug

20   tests thereafter but no more than 15 valid drug tests per month

21   during the term of supervision.

22         6.   He shall not possess a firearm, ammunition,

23   destructive device, or any other dangerous weapon.

24         7.   He shall not participate -- he shall participate

25   and comply with substance abuse treatment, which includes drug

1    and alcohol testing, in a program approved by probation.  He is

2    to refrain from the possession and/or use of alcohol while

3    participating in a substance abuse program.  He is to execute

4    all financial disclosure forms requested by the Probation

5    Office and provide access to requested financial information.

6            He shall participate in a mental health program at

7    the discretion and direction of the Probation Office.  He shall

8    submit to the removal proceedings, including deportation or

9    exclusion, as required by the Department of Homeland Security.

10   He shall not enter the United States without prior

11   authorization and proper authorization.

12           He shall submit his person, residence, place of

13   employment, or vehicle to a search conducted by the U.S.

14   Probation Office at a reasonable time and in a reasonable

15   manner, based upon reasonable suspicion, contraband, or

16   evidence of a violation of a condition of supervision.  Failure

17   to submit to a search may be grounds for revocation.  He shall

18   warn any other resident that his premises may be subject to

19   search pursuant to this condition.

20           Now, in reaching this conclusion the court did

21   consider the factors as the court is required to under section

22   3553(a).  Those include the nature and circumstances of the

23   offense and the history and characteristics of the defendant,

24   the need for the sentence imposed to reflect the seriousness of

25   the offense, to promote respect for the law, and to provide

1    just punishment for the offense, to afford adequate deterrence
2    to criminal conduct, to protect the public from further crimes
3    of the defendant, and to provide the defendant with needed
4    educational or vocational training, medical care, or other
5    correctional treatment in the most effective manner.  Also the
6    kinds of sentences available, the advisory guidelines, the need
7    to avoid unwarranted sentencing disparities.  All of those
8    factors the court has considered in reaching a sentence, and,
9    ultimately, the court just does not believe after determining
10   the guideline range in this case that the court can justify a
11   reasonable sentence below 108 months.

12          Given the amount of drugs involved in this case,
13   clearly the drugs were intended for distribution.  This
14   defendant understood that and then attempted to destroy the
15   drugs after he took them into his apartment.  And I do believe
16   under 3553(a)(2) a sentence below that simply would not reflect
17   the sentence necessary to promote the goals set forth in that
18   subsection of 3553(a).

19          I do understand the family's concerns in speaking to
20   the family.  I'm sure many of you think this is an incredibly
21   harsh sentence.  It is the sentence called for and the bottom
22   sentence called for in the advisory sentencing guidelines.  Mr.
23   Domanguera should understand as well as anyone the danger of
24   drugs because he himself has been a victim of the addiction of
25   ice over the years.  And that's the sad part in any of these

1    cases is what it does to family as much as what happens to the
2    defendants in this courtroom.

3            What I would suggest -- I want to make sure, Mr.
4    Flores, you don't have any objection to this -- that I
5    recommend the 500-hour comprehensive B.O.P. program, which I
6    believe -- I can't say for certainty -- may make him eligible
7    for at least a year reduction in his sentence if he completes
8    that program.

9            MR. FLORES:  Yes, Your Honor.  We have no objection
10   to that.

11           THE COURT:  So if he gets through that program, that
12   can help him reduce his sentence.  And I will make that
13   recommendation.

14           And what about -- and also drug treatment, vocational
15   training as well I'll recommend.

16           Okay.  So those are the reasons the court is imposing
17   the sentence, but let me first ask either counsel if they know
18   of any reason other than already argued as to why the court
19   should not impose sentence as stated.

20           MR. FLORES:  No, Your Honor.

21           MS. SAMESHIMA:  No, Your Honor.

22           THE COURT:  Okay.  The court then at this time does
23   order the sentence imposed as previously stated.

24           Is there any -- a count to dismiss here?

25           MS. SAMESHIMA:  Yes, Your Honor.  I move to dismiss

1    count 2 of the Third Superseding Indictment.

2            THE COURT:  I assume there's no objection, and the

3    court grants that motion.

4            MR. FLORES:  Yes, Your Honor.  No objection.

5            THE COURT:  Now, as far as appeal rights, I do need

6    to inform the defendant as to what appeal rights he has

7    remaining and he has waived in the plea agreement.  It should

8    be in paragraph 12.  Yes, paragraph 12.  Certain rights to

9    appeal your sentence, sir.  But such waivers are generally

10   enforceable, but, if you believe the waiver is not enforceable

11   or if you wish to appeal a matter not waived in the plea

12   agreement, you may then appeal the sentence.  Any notice of

13   appeal must be filed within 10 days of judgment being entered

14   in your case.  The government may file an appeal from this

15   sentence.  You are also advised that you're entitled to

16   assistance of counsel in taking an appeal, and, if you're

17   unable to afford a lawyer, one will be provided to you.  And

18   you can certainly talk to Mr. Flores about that.

19           Anything else to take up in this matter?

20           MS. SAMESHIMA:  No, not from the government, Your

21   Honor.

22           MR. FLORES:  Your Honor, as far as recommended

23   facility --

24           THE COURT:  Yes.

25           MR. FLORES:  -- or placement, Mr. Domanguera has

1    indicated a preference for Lompoc.

2            THE COURT:  Do they have the drug treatment program

3    there; do you know?

4            MR. FLORES:  I'm not aware.  The Probation Office --

5            THE COURT:  Do you know?

6            PROBATION OFFICER:  Your Honor, I believe Lompoc does

7    provide the 500-hour.

8            THE COURT:  All right.  Because I don't want to

9    recommend an institution that would be inconsistent with that

10   other recommendation.

11           MR. FLORES:  Yes, Your Honor.

12           THE COURT:  Okay.  Mr. Domanguera, sir, all I can say

13   to you is that you know what brought you here today, and that

14   is your drug addiction ultimately is what led you to be in this

15   position you are today.  And I hope you take advantage of the

16   programs offered to you in prison because your primary goal now

17   needs to be to get yourself clean and stay clean for the rest

18   of your life.

19           I think you understand -- you seem like a very

20   intelligent man -- that, if you can't get your addiction under

21   control, then you're going to end up back in prison or worse.

22   So I hope that you find the inner strength to fight the

23   addiction and to take advantage of what I hope will be afforded

24   to you by the Bureau of Prisons in a very comprehensive drug

25   treatment program.  And good luck to you.

1              Thank you.  We're in recess.

2         (Court recessed at 9:47 A.M.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    COURT REPORTER'S CERTIFICATE

2            I, Debra Kekuna Chun, Official Court Reporter, United

3    States District Court, District of Hawaii, do hereby certify

4    that the foregoing is a correct transcript from the record of

5    proceedings in the above-entitled matter.

6            DATED at Honolulu, Hawaii, December 13, 2006.

7

8                                        /s/ Debra Chun

9                                        DEBRA KEKUNA CHUN

10                                       RPR, CRR

11

12

13

14

15

16

17

18

19

20

21

22

23          .

24
    .
25