IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 02-10591 |
| | ) | |
| Plaintiff-Appellee, | ) | CR. NO. 00-00186 WJR 10 |
| | ) | District of Hawaii |
| v. | ) | |
| | ) | |
| JULIE D. JAMES, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |

APPELLANT'S OPENING BRIEF

and

CERTIFICATE OF SERVICE

ARTHUR E. ROSS
126 Queen Street, Suite 210
Honolulu, Hawaii  96813
(808) 521-4343

Attorney for Defendant-Appellant
JULIE D. JAMES

# EXHIBIT "H"

This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

### STATEMENT OF THE CASE

**Proceedings.**

On May 12, 2000, Appellant JULIE D. JAMES ("Appellant" or "Julie") and her husband Mike Savage ("Mike") were arrested in Maui, State of Hawaii, by DEA agents who had been conducting an investigation into Mexican drug-trafficking organizations operating in several states, including Hawaii.

On May 25, 2000, Appellant was charged in two counts of a 56-count first superseding indictment with conspiracy to distribute heroin and cocaine (Court I) and using a telephone in facilitating that conspiracy (Count 54). CR 56; ER 1. The First Superseding Indictment in CR. No. 00-00186 WJR named 11 defendants; several other indictments named other defendants arrested in the same investigations. (**See**, *e.g.*, 14 defendants charged in 81-count first superseding indictment in CR. No. 00-00187 HG.)

Appellant moved to change her plea to guilty to the telephone facilitation charge, Count 54. CR 330. At a Rule 11 hearing on January 29, 2002, her plea agreement was signed and filed. CR 334, 337. **See also**, Memorandum of plea agreement ("PA") at ER 337; transcript ("Tr.") of Rule 11 hearing ("Tr. 29Jan02") at ER 334.

2

A draft Pre-sentence Report ("PSR") was prepared and both sides responded.[2] Appellant was sentenced on June 24, 2002. CR 425. Applying the federal sentencing guidelines, the court imposed a 37 month sentence of imprisonment plus one year supervised release. CR 425. **See,** Tr. of June 24, 2002, sentencing hearing ("Tr.24Jun02") at ER 65.

Judgment entered on June 26, 2002. CR 431; ER 431.

On June 27, 2002 Appellant moved to set aside her sentence and guilty plea and for withdrawal and substitution of appointed counsel. CR 434, 435. On July 5, 2002 Appellant moved for extension of time to file her notice of appeal in order for the district court to hold hearings on those motions. CR 443.

On July 23, 2002 Appellant's motion to set aside her sentence and guilty plea was denied. CR 459. Appellant filed her notice of appeal (CR 458) and the court granted appointment of replacement counsel. CR 459, 465.

**Bail status:** Appellant is incarcerated, serving the sentence imposed in this matter.

**Statement of Facts.**

From approximately 1999 the DEA investigated Mexican drug-trafficking organizations operating in several states, including Hawaii. Law enforcement identified Jorge Salazar-Guillen, of

_____

[2]/ Copies of Appellant's PSR accompany this opening brief under seal.

3

Lahaina, Maui, Hawaii as the leader of one of the targeted organizations.  In early March 2000 the U.S. District Court for the District of Hawaii authorized wire-taps of Salazar's telephones.  PSR ¶ 10.  (Undisputed background facts are taken from Appellant's PSR.)

Julie's husband, Mike Savage, was a heroin distributor on Maui, identified as working for Salazar.  On April 8, 2000 Julie received a call from Salazar who told her to relay it to Savage. Appellant told Salazar to call Savage's cellular phone.  PSR ¶ 11.

On May 25, 2000 9/11/97, Julie was charged in two counts of a 56-count First Superseding Indictment as follows:

Count 1:

> On or about November 1, 1999, to on or about April 8, 2000, in the District of Hawaii and elsewhere, defendants ... SERVIN-SOTO, ... GUZMAN-SOTO, ... RODRIGUEZ, ROMER, ... VANETTEN, FLACO LNU, JOANN LNU, ... RAEBETT, ... MIKE SAVAGE, aka "Michael James," JULIE D. JAMES, aka "Julie Savage," and ... GRINDLING did conspire together with each other, and with Jorge Salazar-Guillen, ... [and 11 named others] and with other persons unknown to the Grand Jury, to commit offenses against the United States, that is, to knowingly and intentionally distribute and possess with intent to distribute a quantity of heroin, in excess of 100 grams, a Schedule I controlled substance, and a quantity of cocaine, a Schedule II controlled substance.
>
> All in violation of Title 21, United States Code, Section 841(a)(1).

Neither Julie nor her husband Mike were named in any of the 39 overt acts.

Count 54:

> On or about April 8, 2000, in the District of Hawaii,

4

T

defendant JULIE D. JAMES, aka "Julie Savage," used and caused to be used a communications facility, that is, a telephone, in causing or facilitating the commission of a conspiracy to distribute and possess with intent to distribute a quantity of heroin in excess of 100 grams, a Schedule I controlled substance, a felony under Title 21, United States Code, Section 846.

All in violation of Title 21, United States Code, Section 843(b).

(Mike Savage was charged in Count 55 for the same telephone call as Julie was charged in Count 54. He was also charged in Counts 24, 41, 45, 47 and 48.)

Julie's counsel attempted to negotiate a plea agreement with the prosecutor, beginning, at the latest, in or around November 2001. See, Tr. 23Jul02 at 3-6. As later summarized by defense counsel, the prosecutor stated that: (1) he had ample evidence to show that the conspiracy charged in Count 1 involved more than 100 grams of heroin; (2) Julie's plea agreement was contingent on Mike pleading guilty to involvement with more than 100 grams of heroin; and (3) "the only deal he would make with the husband[] was on the conspiracy." Id. (See also, exhibits attached to Reply Memorandum filed July 19, 2002. ER 103.) On January 28, 2002 a hearing was set for January 29, 2002 on Julie's motion to change her plea pursuant to a plea agreement ("PA"). CR 330.

Julie entered her plea of guilty to the telephone facilitation charge only, Count 54 of the First Superseding Indictment. CR 330. At a Rule 11 hearing on January 29, 2002, her plea agreement was signed and filed. CR 334, 337. **See also,**

5

T

PA ER 53-62; Rule 11 hearing ("Tr. 29Jan02") at ER 40-52.

The transcript of the change of plea hearing indicates that it began at 3:51 p.m.  Virtually simultaneously with the Rule 11 hearing, the prosecutor filed a Superseding Information charging Appellant's husband Mike with conspiracy "to knowingly and intentionally distribute and possess with intent to distribute 99 grams of heroin[.]"[3] CR 333; ER 333.  Immediately after taking Julie's plea to the First Superseding Indictment, the court accepted Mike's guilty plea to the just-filed Information pursuant to plea agreement.  CR 340, 335, 336.

During the Rule 11 colloquy the prosecutor read Count 54. Tr. 29Jan02 at 3-4.  The court's "advisement" regarding the nature of the charges was terse:

> Q. Do you understand the charges that are being made against you, Ms. James?
>
> A. Uh-huh -- yes.
>
> Q. Did you do the things that the count charges you with doing?
>
> A. Yes.
>
> Q. So you change your plea from not guilty to guilty?
>
> A. Yes.
>
> Q. Okay. Have you discussed this case with your attorney?
>
> A. Yes.
>
> Q. Have you discussed the sentencing guidelines with

[3]/ The Superseding Information is file-stamped 3:50 p.m.

6

him?

A. Yes.

Q. Do you understand that the sentencing judge must
ordinarily select a sentence from within the guideline
range?

A. Yes.

Q. Do you understand, however, that if the case
presents unusual features, the law permits the judge to
depart from the guidelines and impose a sentence either
above or below the guideline range?

A. Yes.

Q. Although most sentences will be imposed within the
guideline range, do you understand there's no guarantee of
that?

A. Yes.

Q. Do you understand that it your attorney, or any
other person, has calculated a guideline range for your
case, that that is only a prediction on their part?

A. Yes.

Q. Do you know what the maximum sentence is you could
receive in this case?

A. Yes.

Q. Under the statute?

A. Uh-huh.

Q. What is it?

A. Four years.

Tr. 29Jan02 at 4-5.

The entire factual basis for Julie's plea was:

Q. The court will now advise you of your constitutional
rights.   Tell me what you did that causes the indictment to
be filed against you?

7

A. Tell you what I did?

Q. Yes, just tell me what it was, briefly.

A. I received a phone call with a message from my husband, and I let my husband know that somebody called for him.

DEFENSE COUNSEL: And what was the nature of the call?

A. And it was drug-related.

BY THE COURT:

Q. Okay. You are entitled to a speedy and a public trial. You are entitled to a trial by jury, or a trial by court, if jury is waived. You have the right to confront and cross-examine all witnesses testifying against you. You have the right to the compulsory processes of this court for the obtaining of witnesses in your own behalf. You have the right to have assistance of counsel at all stages of the proceedings. You have the right to testify in your own behalf, but you cannot be compelled to be a witness against yourself. And you have the right to bail.

Has your attorney explained your constitutional rights to you?

A. Yes.

Tr. 29Jan02 at 6-7.

Not only was there no discussion of the factual situation on which the charges against Julie were based, but the court did not explain the elements of the charges themselves, which the prosecutor would have had to prove beyond a reasonable doubt at a trial. Nor did the prosecutor state what evidence he was prepared to introduce at trial to prove the charges.

As part of the plea agreement, the prosecutor dismissed Count 1 of the First Superseding Indictment, the conspiracy charge. Id. At 11-12.

8

Julie's plea agreement provided, **inter alia**:

1. Defendant acknowledges that she has been charged in the Indictment with violating Title 21, United States Code, Sections 846 and 843(b).

2. Defendant has read the charges against her contained in the First Superseding Indictment, and those charges have been fully explained to her by her attorney.

3. Defendant fully understands the nature and elements of the crimes with which she has been charged.

4. Defendant will enter voluntary pleas of guilty to Count 54 of the First Superseding Indictment charging her with using a telephone to facilitate a conspiracy to distribute in excess of 100 grams of heroin.  The prosecution agrees to move to dismiss the remaining count of the First Superseding Indictment as to Defendant after sentencing.

5. Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6. Defendant enters these pleas because she is in fact guilty of using a telephone to facilitate a conspiracy to distribute in excess of 100 grams of heroin as charged in Count 54 of the First Superseding Indictment, and agrees that this plea is voluntary and not the result of force or threats.

7. Defendant understands that the penalties for the offenses to which she is pleading guilty include:

a. up to four years imprisonment and a fine of up to $250,000, plus a term of supervised release of up to one year[.]

. . .

8. Defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charge to which Defendant is pleading guilty:

a. During late 1999 and early 2000, on the island of Maui, the defendant's husband, Michael James, aka Mike

9

Savage, obtained heroin from Jorge Salazar on the island of
Maui.  The defendant was aware that Jorge Salazar and
Michael James were in agreement to distribute, and to
possess with the intent to distribute, over 100 grams of
heroin to others.

On or about April 8, 2000, while on Maui, the
defendant used a telephone with the intent of facilitating
Jorge Salazar and Michael Savage in their agreement to
distribute, and to possess with intent to distribute heroin
by speaking with Jorge Salazar on the telephone.

. . .

11. The Defendant is aware that she has the right to
appeal the sentence imposed under Title 18, United states
Code, Section 3742(a). Defendant knowingly waives the right
to appeal, except as indicated in subparagraph "b" below,
any sentence within the maximum provided in the statute(s)
of conviction or the manner in which that sentence was
determined on any of the grounds set forth in Section 3742,
or on any ground whatever, in exchange for the concessions
made by the prosecution in this plea agreement.

a. The Defendant also waives her right to challenge her
sentence or the manner in which it was determined in any
collateral attack, including, but not limited to, a motion
brought under Title 28, United States Code, Section 2255,
except that defendant may make such a challenge (1) as
indicated in subparagraph "b" below, or (2) based on a claim
of ineffective assistance of counsel.

b. If the Court in imposing sentence departs (as that
term is used in Part K of the Sentencing Guidelines) upward
from the guideline range determined by the Court to be
applicable to the Defendant, the Defendant retains the right
to appeal the upward departure portion of her sentence and
the manner in which that portion was determined under
Section 3742 and to challenge that portion of her sentence
in a collateral attack.

c. The prosecution retains its right to appeal the
sentence and the manner in which it was determined on any of
the grounds stated in Title 18, United States Code, Section
3742(b).

12. The Defendant understands that the District Court
in imposing sentence will be bound by the provisions of the
Sentencing Guidelines. Subject to the exceptions noted in

10

the previous paragraph, the Defendant is surrendering his [sic] right to challenge any sentence within the statutory maximum, or the manner in which it was determined, including, but not limited to, a sentence that the Defendant perceives to be an incorrect application of the Guidelines. The Defendant further agrees that there. is no promise or guarantee of the applicability or non-applicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

13. The Defendant understands that pursuant to Guideline 6B1.1(c), this Agreement cannot be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary pursuant to Guideline 6A1.1. The Defendant understands that the Court will not accept an agreement unless the court determines that the remaining charges adequately reflect the seriousness of the actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

Entire PA at ER 53-62.

In Julie's PSR the probation officer determined that her base offense level ("BOL") was 26, based on 100 grams of heroin. PSR § 18.  After a three-point decrease for acceptance of responsibility and application of the two-point "safety-valve" reduction, Julie's adjusted offense level ("AOL") was 21.  PSR ¶¶ 19-28.

The PSR described Julie's offense conduct as receiving a telephone call on April 8, 2000, from Jorge Salazar-Guillen, the leader of a targeted drug-trafficking organization, to her husband Mike, who was identified as a heroin distributor for Salazar-Guillen.  §§ 10, 11, 17.  (Mike Savage is referred to on page 4 of the PSR, in the status sheet of defendants in CR. 00-00186 WJR as having "pled guilty to Count 1 of an Information

11

which charges Conspiracy to Distribute and Possession With Intent

to Distribute a Quantity of Heroin.")

There were no objections to the PSR.  CR 398, 429.  However,

counsel asked for an explanation prior to sentencing,

> why the Government refused to allow her to plead to less
> than one hundred (100) grams of the drug [heroin] while
> allowing her husband, Defendant Michael Savage, to plead to
> less than 100 grams.  How is she more culpable than he? ...

**See,** sentencing statement attached to PSR.  (Interestingly, the

prosecutor's sentencing statement as to Mike Savage was sealed.

CR 392.)

At sentencing on June 24, 2002, counsel stated:

> This is an offense that occurred with her blindly
> assisting her husband on the occasion in question, Your
> Honor, which was to relay a message from a drug dealer to
> her husband, who was -- who was actively involved in
> distributing drugs.  Julie's role, what she did, Your Honor,
> is to use this telephone device and what she did was
> communicate a message to her husband regarding drugs that
> had just come into this person's possession.  And that's
> what she's being sentences for before you.

> As I indicated in my objection, actually my sentencing
> statement, we were somewhat concerned that her husband was
> allowed to plead to conspiracy to possess with intent of
> something less than 100 grams.  When we asked for the same
> consideration, Your Honor, with the government, we were told
> flatly no, she would have to plead to in excess of 100.

> So it seems wrong to me, Your Honor, that they would
> let her husband plead to something less and make her plead
> to something more, although she's pleading to a different
> offense.  It would still seem to me, Your Honor, under 32.1
> criminal law that it should be the same and there should be
> a reason for that other than the fact that there was one
> lawyer representing her husband and there's another lawyer
> representing her.

> An I hope it hasn't anything to do with me, although in

12

T

this and other cases I continue to think, Your Honor, that people are getting better deals than I am, and I'd like to know why and I'd like this court to inquire as to why the husband was allowed to plead to less than a hundred grams when my client's role in this case was allegedly helping him with something in excess of 100 grams.

Tr. 24Jun02 at 3-4.

The prosecutor characterized counsel's request for an explanation as a comparison of plea agreements, implied that the disparate treatment was an "internal decision[]" of the U.S. Attorney's Office and challenged counsel to allege prosecutorial misconduct.  He acknowledged that Julie was treated differently but implied that the "conspiracy" somehow deserved less punishment than telephone facilitation of the same conspiracy.

Our position is this, Your Honor: Mr. Wilson would ask us to compare the plea agreements in these cases.  The United States is not going to do that because we're not in the custom of discussing what internal decisions are made concerning plea negotiations.

Needless to say, her husband pled guilty to a conspiracy and this defendant pled guilty to a telephone count. So I think the defendant has been treated differently.  We also think that if the defense thinks they have been treated unfairly or there has been prosecutorial misconduct or if they wish to withdraw their plea, they can do that.  And if they believe they've been treated unfairly, they should file a motion claiming prosecutorial misconduct and we'll respond.  Because I haven't seen anything that says that they've made anywhere near the threshold showing.

Defendant would have you believe that she's only involved in one telephone count.  Well, that's what she's pled to.  She was charged in the conspiracy and there's evidence that we have that she was involved with her husband more than that.  But we did let her plead to one telephone count.

Id. at 8.

The court accepted the calculations in the PSR — at total offense level 21, criminal history I the guideline range was 37 to 46 months -- and imposed a sentence of 37 months, the bottom of the range.  Id. at 9-10.

The court advised Julie that she had the right to appeal her sentence.  Id. at 13.

Mike Savage was sentenced two days later, on June 26, 2002. It was then that counsel learned that the prosecutor's representations, which had induced Julie to enter her plea, were false.  (Both sentences were 37 months, but were based on different drug amounts. This, essentially, gave Mike a two-level downward departure which was not available to Julie.)

Counsel immediately filed a motion to set aside Julie's sentence and guilty plea.  CR 434.  He also filed a motion for substitution of counsel alleging that the prosecutor treated counsel's clients differently solely because he appeared to be biased against counsel, either for racial or other personal reasons.  CR 435.

Counsel's declaration included:

> 2. That by letter dated October 16, 2002, I wrote to Assistant U.S. Attorney Thomas Muehleck in an attempt to ascertain the facts and circumstances which led him to indict Mrs. Savage for the conspiracy charge, but he would not respond other than to state that he had substantial evidence showing that she was a co-conspirator.

> 3. That, despite my advice to the contrary, Mrs. Savage asked me to obtain a "telephone count" and she would plead to it, which she did; that I attempted to get Mr. Muehleck to allow Julie to plead to an open quantity of heroin (less

14

than 100 grams), but he refused.

4. That, therefore, I was informed that co-Defendant and husband, Mike Savage, had subsequently plead guilty to the conspiracy charge, but to less than 100 grams; that I attempted to find out why he was allowed to plead to less of the drugs than Julie, and I was informed that Mike had a criminal record and would be getting more time than Julie.

5. That on Monday, June 24, 2002, Mrs. Savage was sentenced to 37 months of incarceration (Level 21, Cr. History I); that Mr. Muehleck would not respond to our Sentencing Statement raising the issue of the quantity of drugs which she had to plead to as opposed to Mike, other than to state that he did not want to reveal the internal decisions of his office.

6. That I later found out that Mr. Savage's criminal record still places him in Criminal History I, that his Guideline range was level 22, and that, by the time of Sentencing on Wednesday, June 26, 2002, he will be at level 20 and maybe 19!

7. That it is patently wrong, discriminatory and abusive that Julie would get a worse deal than Mike and that she would do more time, especially since she offered to plead against him at one point and had far less involvement in this case than did her husband and others.

8. That I am further informed that one of the female Defendants (I don't know who) was allowed to plead to a Level 12 (open quantity) or something like that, resulting in a final level of 8, yet she had significantly more involvement in this case than did Julie!

See, entire Motion at ER 79-90.

In his opposition the prosecutor asked the court to construe Appellant's motion to withdraw her guilty plea and sentence as one made under 28 U.S.C. § 2255. CR 445: ER 103.

In his reply memorandum defense counsel requested that the court either set aside the sentence and plea, based on Brady violations or on sentencing manipulation, or grant Julie a two-

15

level, or more, downward departure. CR 455; ER 108-24. Counsel reiterated this request and his supporting arguments (that Appellant's plea was entered into based on representations which later turned out to be false) at the telephonic hearing on his two motions on July 23, 2002.

THE COURT: I thought I gave him the same sentence I gave her?

MR. WILSON: You did, Your Honor, but you gave him that sentence -- he got a two-level decrease, and had Julie got the two points down, if she would have had -- if she could have pled to less than 100 grams, as I specifically asked Muehleck, which is the same thing they let her husband do, her guidelines would have been less, Your Honor; she would have been looking as 30 months and not 37 months. And that's what I put in my reply memorandum, Your Honor. She should have got the benefit of that two-level decrease. And I'm positive, Your Honor, that based on that, you would have given her 30 months, because her culpability in this case was far less, Judge, far less than her husband's. She pled to a telephone charge. How can be guilty of more than 100 grams by being with her husband, and yet he can plead to less than that and yet have six telephone counts? We don't understand that.

. . .

For all of those reasons, Your Honor, we believe that we were tricked into this deal, or we were discriminated against. However, you don't have to find either discrimination or bad faith; all you have to find is an unjustified sentencing disparity of two levels, and that's what we're asking the court to find.

As to the other cases, Your Honor, what other defendants [represented by me] may or may have not received from Mr. Muehleck, I believe I'm in a conflict of interest, and, as I stated in my reply memorandum, I ask that another lawyer be appointed so the other lawyer can see what's happening. And, just like in United States versus Miguel Rico, Your Honor, if it is required to appoint another lawyer [wherein the same prosecutor offered to replacement counsel a plea deal which he refused to consider for me], another non-black lawyer, to represent Julie, someone that

16

> can work with Muehleck to get Julie the sentence she
> deserves, then I'm all for it. And under the rules of
> professional conduct in the State of Hawaii, which the
> District Court here has adopted, then I must do that.

Tr. 23Jul02 at 9-12. Entire transcript at ER 129-50.

After hearing the prosecutor's response, the court
characterized Julie's and Mike's sentences as "the same" and
denied relief.

> I can't do anything about it. I'm sorry. It's 2255. They
> both got the same sentence. And I am going to deny the
> motion. Just as simple as that.

Id. at 19.[4]

Julie received a much harsher sentence than **any** of the
similarly situated defendants charged in CR 00-00186 WJR, even if
those other defendants pled guilty to Count 1, the over-100 grams
of heroin conspiracy. Some defendants entered guilty pleas to
telephone counts only, just as Julie did, but got much more
favorable treatment.[5]

---

[4]/ The court failed to recognize (or address) the argument
that Julie's guideline was incorrectly calculated.

[5]/ Francisco Servin-Soto (01): charged in Counts 1, 2, 4,
11-15, 19-23, 29, 37, 39 and 46; pled guilty to Counts 1, 11 and
20. (Also pled guilty to Counts 2 (conspiracy to distribute and
possess with intent various drugs) and 6 (aiding and abetting
possession with intent more than 500 grams of cocaine) in CR 00-
00182 SOM.) Sentenced to 97 months as to each Count in both
indictments, to run concurrently.

Jessica Guzman-Soto (02): charged in Counts 1, 11, 14, 20,
and 22; pled guilty to Counts 1, 11, 14, 20, and 22. (Also pled
guilty to Counts 2 and 6 in CR 00-00182 SOM.) Sentenced to 24
months as to each Count in both indictments, to run concurrently.

(continued...)

17

## SUMMARY OF ARGUMENT

Appellant's plea was "involuntary" for two reasons.

First, the prosecutor's misrepresentations wrongfully

induced a guilty plea which resulted in constitutionally

disparate treatment.  A prosecutor holds a unique position of

trust in society.  Here the prosecutor abused that trust,

deliberately misleading the district court, prejudicing Appellant

[5](...continued)
Refugio Rodriguez Estrella (03): charged in Counts 1, 16,
17, 35, 38, 50 and 52.  Pled guilty as charged.  Sentenced to 46
months on all Counts, to run concurrently.

Pablo Romero (04): charged in Counts 1, 3, 5, 20, 26, 27,
28, 31, 32, 36, 42, 46, 51 and 53.  Found guilty on all counts by
juey verdict.  Sentenced on Counts 1, 3 and 20 to 98 months; on
Count 5 to 12 months; on Counts 27, 28, 31, 32, 36, 46 and 51 to
48 months; and on Count 53 to 48 months; all to run concurrently.

Melinda Lee Vanetten (05): charged in Counts 1 and 20; pled
guilty to Count 1.  Sentenced to time served.

"Flaco" (06): charged in Counts 1, 8-10 and 18; pled guilty
to Count 18.  Sentenced to time served.

"Joann" (07): charged in Counts 1 and 7; pled guilty to
Count 7.  Sentenced to time served.

Sharon Rabbett (08): charged in Counts 1 and 6; pled guilty
to Count 6.  Sentenced to probation.  (Also sentenced to
probation on Count 1 of CR 00-00245 DAE.)

Mike Savage (09): charged in Counts 1, 24, 41, 45, 47, 48
and 55; pled guilty to an Information, not to the Conspiracy
charged in the First Superseding Indictment.  Sentenced to 37
months.

Alan Grindling(11): charged in Counts 1, 25, 30, 33, 34, 40,
43, 44, 49 and 56; pled guilty to an Information, not to the
Conspiracy charged in the First Superseding Indictment.
Sentenced to 25 months.

and denying her a fair sentencing proceeding. The record shows violations of constitutionally protected rights -- misconduct and misrepresentations to the court -- that are "so shocking to due process values" that the resulting "manifest injustice" is equally clear. Thus, the court erred in denying Appellant's Motion to withdraw her sentence and plea, in failing to hold an evidentiary hearing, and in failing to make any findings of fact or conclusions of law to support that denial.

Second, Rule 11 violations rendered the plea involuntary.

The court accepted Appellant's plea of guilty to Count 54 of the First Superseding indictment without making the majority of the advisements required by Rule 11 of the Fed.R.Cr.P. ("Rule 11"). The court failed to advise her of the elements of the offenses charged, failed to ensure that she understood the nature of the charge to which she was pleading guilty, and failed to advise of the facts the prosecutor must prove beyond a reasonable doubt in order to prove those elements if Appellant decided to proceed to trial, including the amount of drugs involved in the conspiracy charged in Count 1.

Appellant requested alternative remedies for the prejudice she suffered from prosecutorial misconduct: to withdraw her plea or for a downward departure. The court denied the motion for withdrawal and ignored the request for a downward departure.

19

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

C. A. NO. 02-10591

UNITED STATES OF AMERICA,   )   CR. NO. 00-00186-10 WJR
   )   (USDC-Hawaii)
       Plaintiff-Appellee, )
   )
       Vs.          )
   )
JULIE D. JAMES,          )
   )
       Defendant-Appellant.)
   )
   )

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

**ANSWERING BRIEF OF THE UNITED STATES OF AMERICA
TO DEFENDANT-APPELLANT JULIE D. JAMES**

**CERTIFICATE OF SERVICE**

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

THOMAS MUEHLECK
Assistant U.S. Attorney
Room 6-100, Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone: (808) 541-2850

Attorneys for Plaintiff-Appellee
United States of America

23, 2002.   The court orally denied the defendant's motion to set
aside her guilty plea and sentence.   The Court's order was filed
on December 16, 2002.

IV.   ARGUMENT

A.   Defendant's Selective Prosecution Claim Fails Because
     She Fails to Show Similarly Situated Defendants Were
     Given More Favorable Plea Bargains And That Her
     Prosecution Was Based On An Impermissible Motive

It is well settled that there is no constitutional
right to a plea bargain and the decision whether to offer a plea
bargain is a matter of prosecutional discretion.   United States
v. Sustaita, 1 F.3d 950, 952 (9th Cir. 1993).   The United States
has the right to accept an offer from any defendant to plea to a
count of the Indictment that does not require the Court to impose
a mandatory minimum term of imprisonment.   In order to challenge
a prosecutor's plea bargaining or charging decision, a defendant
must establish a prima facie case of invidious discrimination by
showing that (1) others similarly situated to him were not
prosecuted or were given more favorable plea bargains; and (2)
his prosecution was based on an impermissible motive, i.e., a
discriminatory purpose or intent.   United States v. Wayte, 710
F.2d 1385, 1387 (9th Cir. 1983), affirmed 470 U.S. 598 (1985).

> "The presumption, of course, is that a coordinate
> branch of government will exercise its authority
> in a constitutionally appropriate fashion.
> No one is entitled to call the prosecution to
> answer for a particular charging or plea bargaining
> decision without making a prima facie showing that
> wrongful discrimination is probably taking place."

8

United States v. Redondo-Lemos, 955 F.2d 1296, 1302
(9th Cir. 1992).

The defendant submits absolutely no evidence that
others similarly situated to her were given more favorable plea
bargains.  The defendant claims that her husband's plea bargain
was more favorable and that she received the same sentence of 37
months imprisonment as her husband but only offers by footnote
the sentences of other co-defendants.  Appellant's Opening Brief,
page 17, footnote 5.  Co-defendant Savage was required to plead
to a conspiracy count that was punishable by up to twenty years
imprisonment under 21 U.S.C. § 841(b)(1)(C).  In contrast,
defendant plead guilty to a telephone Count which was limited to
a maximum term of incarceration of four years.  Additionally,
defendant does not explain that two of her co-defendants Jessica
Guzman-Soto and Melinda Lee Vanetteen, who received lesser
sentences, testified for the United States in the trials of
United States v. Pablo Romero, Cr. No. 00-00186 WJR and United
States v. Raquel Salazar-Salazar, Cr. No. 00-00184 HG and
received downward departure motions by the United States based on
their cooperation with law enforcement officers.  SER, pages 31,
38.  Defendant did not cooperate or testify for the United
States.  The defendant fails to show that co-defendants who were
similarly situated received more favorable plea agreements.  Nor
does the defendant note that other co-defendants, Joanne Carroll
("Joann") and Charles Sims ("Flaco") were only found by their

9

presentece reports to have been personally involved with merely five grams of heroin and warranted substantially lower guideline ranges and thus lower sentences. SER, pages 40, 47.

The lighter sentences imposed by the district court on James' co-defendants are just as easily explained by the cooperation provided by the co-defendants and their minor roles in the conspiracy. The defendant, by failing to submit any evidence of selective prosecution based on a discriminatory purpose, has not made the threshold showing of a constitutional violation necessary to challenge the plea agreement in her case. United States v. Armstrong, 517 U.S. 456 (1996).

B. Defendant Has Failed To Show Any Prosecutorial Error Or Failure to Disclose Material Discoverable Under Brady v. Maryland, 373 U.S. 83 (1963)

Counsel for Defendant, argues that "with regard to Julie, the prosecutor presented to the court a theory and set of facts that he knew contradicted the theory and facts that he planned to advance and [did] advance at Mike's sentencing hearing." Appellant's Opening Brief, page 23. Counsel for defendant offers no citation to the record where this occurred. In fact, counsel for defendant mistakenly argues that a decision to offer different plea agreements means that exculpatory evidence under Brady v. Maryland was not disclosed. Counsel for defendant does not identify the exculpatory information that was withheld but speculates that the difference in co-defendant

10