IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| FELIPE RAGUINDEN DOMANGUERA, </br></br>       Petitioner, </br></br>  vs. </br></br>UNITED STATES OF AMERICA, </br></br>       Respondent. </br>_____ | CR. NO. 04-00061-02 JMS </br>CIV. NO. 06-00580 JMS-KSC </br></br></br>ORDER DENYING PETITIONER'S </br>MOTION TO VACATE, SET ASIDE, </br>OR CORRECT A SENTENCE |

## ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE

On October 27, 2006, petitioner Felipe Raguinden Domanguera ("Domanguera") filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Domanguera, represented by counsel, filed a memorandum in support of his motion on October 30, 2006 ("Memorandum in Support"), and the United States filed an opposition to the motion on January 17, 2007 ("Memorandum in Opposition"). For the following reasons, the Court DENIES the § 2255 motion.

### I. **BACKGROUND**

On January 28, 2005, pursuant to a plea agreement, Domanguera entered a plea of guilty before Magistrate Judge Leslie E. Kobayashi to Count 1 of

a third superseding indictment charging him with conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers.  Domanguera's guilty plea was accepted on February 11, 2005.  In return for his plea of guilty, the United States dismissed Count 2 of the third superseding indictment as to Domanguera.

    The following relevant facts were taken from the memorandum of plea agreement or the presentence investigation report:  On January 22, 2004, a Federal Express parcel was intercepted by law enforcement and found to contain 1,379 grams gross weight of methamphetamine.  The parcel was repackaged with pseudo-methamphetamine, an electronic monitoring device, and florescent powder.  The parcel was then delivered by an undercover officer posing as a Federal Express employee to co-defendant Jaime Agtang.  Domanguera, Agtang, and co-defendant Dan Tauyan then transported the parcel from its place of delivery to Domanguera's residence.  As Domanguera, Agtang, and Tauyan were driving with the drugs, they believed that they were being followed by law enforcement.  Domanguera took the parcel from the vehicle into his residence, opened it, and handled the contents.  Tracking the beeper placed in the package, law enforcement went to Domanguera's apartment and knocked on the door.  Domanguera attempted to flush the pseudo-methamphetamine down the toilet.

Domanguera admitted that he knew the parcel contained methamphetamine, and that he intended to remove the drugs from the parcel and distribute the drugs to others. Pursuant to the plea agreement, Domanguera stipulated that the parcel contained 1,344 grams of d-methamphetamine HCL of 97% purity.

Domanguera was sentenced by this court on October 19, 2005. The court first determined the applicable sentencing guideline range. After receiving a two-level reduction under the "safety valve," and a three-level reduction for early acceptance of responsibility, Domanguera was placed at guideline offense level 31, criminal history category I, with an advisory guideline range of 108-135 months incarceration. After considering the advisory guidelines and the other factors under 18 U.S.C. § 3553(a), the court imposed a sentence of 108 months incarceration.

## II. **STANDARD OF REVIEW**

The court's review of Domanguera's motion is governed by 28 U.S.C. § 2255:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to

3

>impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A court should hold an evidentiary hearing on a § 2255 motion "unless the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. In the Ninth Circuit, this standard requires an evidentiary hearing where "the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984). "Thus, the district court's decision that [petitioner's] ineffective assistance claim did not warrant an evidentiary hearing was correct if his allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (*citing Schaflander*, 743 F.2d at 717) (internal quotation signals omitted).[1] Conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993). After a

---

[1] Further, although an evidentiary hearing is normally required when a petitioner's allegations are based on facts outside of the record, no hearing is required when the petitioner's credibility can be "conclusively decided on the basis of documentary testimony and evidence in the record." *Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988); *see also Frazer v. United States*, 18 F.3d 778 (9th Cir. 1994).

careful review of the record, the court finds that it is appropriate to rule on the motion without an evidentiary hearing.

### III. **ANALYSIS**

Domanguera claims that his court-appointed counsel, Brandon Flores, was ineffective in two ways. First, he claims that Flores failed to notify him of his right to appeal his sentence. Second, Domanguera asserts that Flores "was ineffective by not presenting advocacy based upon *Apprendi* and its progeny regarding Sixth Amendment issues." Memorandum in Support at 13.

A. **Legal Framework for Ineffective Assistance of Counsel Claims**

The Sixth Amendment guarantees the right to the effective assistance of counsel at all critical stages of a criminal proceeding, including sentencing. *United States v. Gonzalez*, 113 F.3d 1026 (9th Cir. 1997). To demonstrate ineffective assistance of counsel, a petitioner must demonstrate: (1) that his counsel's performance was objectively deficient and (2) that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668 (1984). Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. Even if counsel's performance was deficient, the petitioner "must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

B. **Flores's Failure to Consult Domanguera Regarding his Right to Appeal was Not Deficient Performance**

Domanguera waived most of his appellate rights in his plea agreement. Specifically, paragraph 12 of the plea agreement provides that Domanguera knowingly waived his right to appeal except in one circumstance: "If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the Defendant, the Defendant retains the right to appeal the portion of the sentence greater than specified in that guideline range under Section 3742[.]"[2] Memorandum in Opposition at Ex. E. During the change of plea proceeding, both counsel for the government and Magistrate Judge Kobayashi assumed that the plea agreement also permitted Domanguera to claim ineffective assistance of counsel on direct appeal. For purposes of this motion, the court will treat the appeal waiver exception to include both the limited right to appeal a sentence greater than that called for by the guidelines and a claim of ineffective assistance of counsel.

---

[2] Domanguera likewise waived his right to file a § 2255 motion, with two exceptions -- if the court imposed a sentence greater than called for by the guidelines or based on a claim of ineffective assistance of counsel.

6

Magistrate Judge Kobayashi discussed the appeal waiver with Domanguera.  Domanguera acknowledged that he was waiving his right to appeal and understood that he would only be able to appeal if he received a more severe sentence than called for by the guidelines or if he claimed ineffective assistance of counsel.

Where a defendant instructs counsel to file an appeal, and the counsel fails to do so, that representation is *per se* ineffective (even in the face of an appeal waiver).  *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1197 (9th Cir. 2005).  A different rule applies, however, where a defendant and his counsel do not discuss appellate rights.  *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), rejected the Ninth Circuit bright-line rule that failing to file a notice of appeal without the defendant's consent is *per se* deficient under *Strickland*.  Instead, the Court held that where the defendant "neither instructs counsel to file an appeal nor asks that an appeal not be taken," a court must ask whether counsel consulted with the defendant about an appeal, meaning to advise the defendant about the advantages and disadvantages of an appeal and making a "reasonable effort to discover the defendant's wishes."  *Id*. at 478.  If counsel did not consult with the defendant, the court must determine if the failure to consult with the defendant constitutes deficient performance.  *Id*.  "[C]ounsel has a constitutionally imposed duty to

consult with the defendant about an appeal where there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480.  A "highly relevant" factor is whether the conviction follows a trial or guilty plea, and whether the defendant waived his appellate rights.  *Id*.  If the first *Strickland* prong is met, to show prejudice a defendant "must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*. at 484.

        The instant case is governed by *Flores-Ortega*, not *Sandoval-Lopez*.  Other than discussing the plea agreement's waiver of appeal, Flores and Domanguera never discussed the possibility of an appeal.[3]  Specifically, in March 2006 correspondence to the court and Flores, Domanguera claimed that he had no contact with Flores after the October 19, 2005 sentencing date.  *See* Memorandum in Support at Exs. E, F.  Flores, in an April 27, 2006 letter to Domanguera, wrote

---

[3] At the conclusion of the sentencing hearing, Domanguera was informed by the court that he must file any notice of appeal within 10 days, that he had waived many of his rights to appeal, but "if you believe the waiver is not enforceable or if you wish to appeal a matter not waived in the plea agreement, you may then appeal the sentence." Memorandum in Opposition at Ex. G, page 23.  He was also informed of his right to a court-appointed counsel to bring an appeal.

that, "you did not indicate at the sentencing, or immediately thereafter, that you wished to appeal." *Id.* at Ex. G.  In a declaration attached to the Memorandum in Opposition ("Flores Declaration"), Flores states that after sentencing, "[a]t no time did he advise me that he wished to file an appeal."  Flores Declaration ¶ 9.  Both Domanguera and Flores agree that they did not discuss the possibility of an appeal after sentencing.

Using the *Flores-Ortega* framework, the court easily concludes that Flores's performance was not deficient.  The Ninth Circuit recently opined that where a defendant waived his right to appeal and did not affirmatively ask his counsel to file a notice of appeal, the failure to file that notice is not deficient:

> In the hypothetical scenario where Sandoval-Lopez never expressed any desire to appeal, *Flores-Ortega* would completely foreclose an ineffective assistance of counsel claim.  In such a scenario, because there was no ground for appeal, as an appeal had been waived, and he had obtained the benefit of his very favorable plea bargain, no rational defendant would want to appeal.  So Sandoval-Lopez's lawyer's failure to file a notice of appeal would not be deficient performance, if he and his client did not consult about an appeal.

*Sandoval-Lopez*, 409 at 1196.  Although dicta, the reasoning is clearly applicable to Domanguera.  Given the appeal waiver, and that he was sentenced within the guideline range (resulting in a waiver of appellate review of his sentence), no

9

rational defendant would want to appeal.  *See United States v. Jeronimo*, 398 F.3d 1149, 1152-53 (9th Cir. 2005) ("We lack jurisdiction to entertain appeals where there was a valid and enforceable waiver of the right to appeal.").  Further, Domanguera did not reasonably demonstrate to Flores that he was interested in appealing.  In fact, the record shows that Domanguera and Flores had limited contact post sentencing.  According to Flores, Domanguera was upset with the sentence imposed and "[t]he only question he had for me was whether his sentence could be served in the Philippines."  Flores Declaration ¶ 9.[4]  Domanguera, in his March 2006 letter to Flores, wrote that "[s]ince I was sentenced, I have not had any further communication from you."  Memorandum in Support at Ex. E.  Under these circumstances, where Domanguera received the benefit of his plea agreement and waived his right to appeal, the court finds that Flores was not deficient in failing to file a notice of appeal.  Given this finding, the court need not address *Strickland's* prejudice prong.

Although far from clear, Domanguera appears to claim that Flores's representation was deficient because the plea itself may have been involuntary,

---

[4] Flores also states in his declaration that "[b]ased on our extensive discussions prior to the change of plea and sentencing, [Domanguera] understood that if the court sentenced him to a term which was not higher then the advisory guidelines, he would not have a legal basis to appeal."  *Id*.

resulting in an invalid waiver of appellate rights.[5]  He first suggests that the court did not provide him with the advisements required under Federal Rule of Criminal Procedure 11 ("Rule 11") rendering the appeal waiver unenforceable.[6]  Next, he appears to raise a claim of prosecutorial misconduct, alleging that the government's "disparate treatment of Petitioner's previous CJA counsel wrongfully induced a guilty plea which resulted in constitutionally disparate treatment, prejudiced Petitioner or denied him a fair sentencing proceeding."  Memorandum in Support 15-16.  Both claims lack merit.

"[W]aivers of appeal must stand or fall with the agreement of which they are a part.  If the agreement is voluntary, and taken in compliance with Rule 11, then the waiver of appeal must be honored.  If the agreement is involuntary or otherwise unenforceable, then the defendant is entitled to appeal." *United States v. Portillo-Cano*, 192 F.3d 1246, 1250 (9th Cir. 1999) (citations omitted).  After

---

[5] To the extent Domanguera is claiming that his appeal waiver was not voluntary, the court disagrees.  "A defendant's waiver of his appellate rights is enforceable if (1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made." *Jeronimo*, 398 F.3d at 1153.  A review of the Rule 11 proceeding demonstrates that Domanguera's waiver of his right to appeal was both knowing and voluntary.

[6] Domanguera cites no facts to support this argument.  Instead, he simply states that this claim requires a review of the transcript from the Rule 11 proceeding.

11

reviewing the transcript from the Rule 11 proceeding, the court concludes that the plea was voluntary and complied with Rule 11.

Federal Rule of Criminal Procedure 11(b)(2) requires that, before accepting a plea of guilty, "the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." During the plea proceeding, Domanguera acknowledged that the plea agreement covered his entire agreement with the United States; that no one made any promise or assurance of any kind in an effort to get him to enter the plea of guilty; and no one threatened, pressured, or forced him to enter the plea of guilty. Magistrate Judge Kobayashi then found that "the defendant is fully competent and capable of entering an informed and valid plea, that his plea of guilty is knowing, and voluntary, supported by an independent basis in fact containing each of the essential elements of the offense[.]" Memorandum in Opposition at Ex. F, page 26.

Rule 11(b)(1) requires "advising and questioning of the defendant." A review of the transcript from the Rule 11 proceeding demonstrates that Domanguera understood the nature of the charge against him; the terms of the plea agreement (including the appeal waiver provision); the maximum possible punishment, including a mandatory minimum sentence; and the constitutional

12

rights he was waiving by pleading guilty. In short, Domanguera has failed to provide any evidence that his plea of guilty was involuntary, and the court can find none based on its independent review.

Domanguera's claim of prosecutorial misconduct is puzzling. He appears to argue that the assigned Assistant United States Attorney ("AUSA") treated Domanguera's previous counsel, Jerry Wilson, in a discriminatory manner. In support of this allegation, he attaches a September 16, 2004 letter from Wilson to the AUSA. In this letter, Wilson claims that the AUSA has "some sort of personal agenda towards me and my clients, like Mr. Domanguera." Memorandum in Support at Ex. C. But Domanguera provides no support, beyond Wilson's bare assertion, to show that the AUSA acted in a discriminatory manner. Further, Flores, not Wilson, was Domanguera's counsel when he entered his guilty plea. There is no explanation as to how Wilson's belief regarding the AUSA impacted Flores's representation of Domanguera. Domanguera has failed to present evidence giving rise to an inference of prosecutorial misconduct, and, even if he had, he has failed to show how such misconduct impacted Flores or his own decision to enter a plea of guilty.

In support of his prosecutorial misconduct claim, Domanguera also points out that he received a harsher sentence than his co-defendants. Like his

13

claim of disparate treatment, Domanguera never connects his claim of misconduct with the sentences imposed on other defendants. Instead, he simply labels the sentences as "impermissible discrimination." Memorandum in Support at 17. The government correctly notes that the co-defendants all cooperated with the government, resulting in the filing of motions for downward departure for each co-defendant. It was the government's motion for downward departure based on substantial assistance that resulted in the disparity in sentencing between Domanguera and his co-defendants. In short, Domanguera's claim of prosecutorial misconduct fails.

C.     **Flores Was not Ineffective in Representing Domanguera at Sentencing**

Domanguera claims that Flores failed to assert meritorious issues at sentencing based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Harris v. United States*, 536 U.S. 545 (2002); *Blakely v. Washington*, 542 U.S. 296 (2004); and *United States v. Booker*, 543 U.S. 220 (2005). In support of this claim, Domanguera states that these line of cases "limit[] the maximum authorized sentencing range to facts what (sic) **have been** pleaded, proven (beyond a reasonable doubt), or admitted." Memorandum in Support at 20-21. Flores's failure to raise Sixth Amendment issues, according to Domanguera, constitutes ineffective assistance of counsel. The court disagrees.

*Booker* contains two rulings. The first majority ruling, authored by Justice Stevens, found that within a system of mandatory sentencing guidelines, any fact (other than a prior conviction) necessary to support a sentence exceeding the maximum authorized by the facts established in a guilty plea or jury verdict must be admitted by the defendant or proved to the jury beyond a reasonable doubt. The second majority opinion, Justice Breyer's remedial holding, then modified the Sentencing Reform Act of 1984 to make the Guidelines advisory by excising the provisions of Title 18 that previously had made the Guidelines mandatory. The advisory guideline system, unlike the mandatory system, does not run afoul of the Sixth Amendment.

*Booker* was decided on January 12, 2005, before Domanguera entered his January 28, 2005 plea of guilty. At sentencing, the court followed the required procedure of first determining the applicable guidelines, and then considering the relevant sentencing factors under 18 U.S.C. § 3553(a). *See United States v. Kilby*, 443 F.3d 1135 (9th Cir. 2006).

Flores filed a sentencing statement, arguing that Domanguera was eligible for a two-level reduction based on his minor role in the offense under Guideline § 3B1.2. After hearing from Flores and the government, the court denied the minor role adjustment. As a result, the court found that the guidelines

called for an offense level 31, criminal history category I.  Flores then requested that the court impose a sentence below the range called for by the guidelines or at the low end of the guideline range.  The court subsequently sentenced Domanguera to 108 months, stating that "in reaching this conclusion the court did consider the factors as the court is required to under section 3553(a)."  Memorandum in Opposition at Ex. G, page 20.  The court proceeded as required by *Booker*, leaving Flores no Sixth Amendment arguments to make.

To the extent Domanguera is arguing that Flores's representation at the sentencing hearing was deficient, the record clearly shows otherwise.  The drugs in this case were seized by law enforcement, leaving little room to argue that a lesser quantity of drugs should be held against Domanguera at sentencing.  Flores argued vigorously for a minor role adjustment, and then provided the court with mitigating circumstances under § 3553(a).  That the court did not agree does not make Flores's representation deficient.

\\\

\\\

\\\

\\\

\\\

## IV. **CONCLUSION**

Domanguera's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence is DENIED. The Clerk is directed to enter judgment and terminate this action.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 6, 2007.



_/s/ J. Michael Seabright_
J. Michael Seabright
United States District Judge

*Domanguera v. United States*; Civil No. 06-00580 JMS/KSC; Cr. No. 04-00061-02 JMS; ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE